David A. CLINGER, Trustee for the Clinger Trust, Plaintiff–Appellant,

v.

Dr. Denzel F. HARTSHORN and Huntsman Camp, Inc., d/b/a Rocky Mountain Safaris, a Colorado corporation, Defendants–Appellees.

No. 02CA1710.

Colorado Court of Appeals, Div. I.

Oct. 9, 2003.

As Modified on Denial of Rehearing Dec. 11, 2003.*

Certiorari Denied May 10, 2004.

* Ney, J., does not participate.

Anne Whalen Gill, P.C., Anne Whalen Gill, Castle Rock, Colorado; Larry Curtis Smith, Denver, Colorado, for Plaintiff–Appellant.

Hoskin Farina Aldrich & Kampf, P.C., Gregory K. Hoskin, Matthew G. Weber, Grand Junction, Colorado, for Defendants–Appellees.

Opinion by Judge DAILEY.

Plaintiff, David A. Clinger, Trustee for the Clinger Trust, appeals those parts of a judgment establishing a prescriptive easement for and awarding costs to defendants, Dr. Denzel F. Hartshorn and Huntsman Camp, Inc. We affirm.

## I.

Plaintiff and Hartshorn own adjoining properties. Plaintiff acquired his property in 1982; Hartshorn acquired his property in 1983. In 1987, Hartshorn purchased a commercial outfitter and guide license for use in conjunction with his company, defendant Huntsman Camp. In 1989, the parties entered into a license agreement, under which Hartshorn was permitted, for three years, to use an access road crossing plaintiff's property for guide and outfitting purposes.

When defendants continued that use of the road following the expiration of the agreement, plaintiff initiated the present action, asserting claims for breach of contract, trespass, and declaratory and other relief regarding use of the road. In their answer to the complaint, defendants averred that they had a prescriptive right, by the acts of Hartshorn's predecessors in title, to use the road for guide and outfitting business purposes; they also counterclaimed to remove an obstruction plaintiff placed on the road and to establish their right to use that road, instead of an alternate route plaintiff created to accommodate a nonparty mineral owner.

The parties stipulated that defendants had a prescriptive right to use the road to access Hartshorn's property for farming and ranching purposes. They disputed, however, whether Hartshorn's predecessors in interest had also acquired a prescriptive right to use the road to conduct a guide and outfitting business.

Pursuant to the parties' agreement, the trial court decided plaintiff was not allowed to relocate Hartshorn's easement, and that, consequently, he had to restore the road to a drivable condition.

At the close of trial, the jury returned verdicts (1) in favor of plaintiff, for $1, on his breach of contract claim; (2) in favor of defendants on plaintiff's trespass claim; (3) in favor of Hartshorn regarding the existence of a prescriptive easement to use the road for a guide and outfitting business; and (4) in favor of plaintiff, on Hartshorn's asserted claim of an easement to use the road for a summer lodging business or for transportation of logs.

Subsequently, the court ordered that the cost of maintaining the road was to be divided equally or, depending upon the uses of the

road, on a pro rata basis between plaintiff and Hartshorn. The court reduced its decisions, as well of those of the jury, to a written judgment, but reserved for the future the issue of the width of the easement.

Four and a half months later, plaintiff filed a motion for reconsideration of the order denying relocation of the easement based on newly discovered evidence. The trial court denied the motion because there was no showing that the new evidence could not have been produced at trial and because some of the new evidence concerned improvements plaintiff had made subsequent to the judgment.

Following an evidentiary hearing, the trial court fixed the width of the easement at eight feet on either side of its centerline, with no obstacles permitted within ten feet of its centerline, awarded costs to defendants, and reduced these decisions to a written supplemental judgment.

## II.

Plaintiff contends that the evidence did not support a finding of prescriptive easement for a guide and outfitting business because (1) there was no evidence of continuous, open, and adverse use of the road for such a business for eighteen years; (2) there was no evidence that Hartshorn or his predecessors in interest were licensed to engage in that activity throughout a prescriptive eighteen-year period; and (3) in any event, Hartshorn abandoned any guide and outfitting easement by signing the 1989 license agreement. We disagree.

### A.

■ An easement is an interest in property that, though distinct from an ownership interest in the land itself, nevertheless confers upon the holder of the easement an enforceable right to use property of another for specific purposes. An easement may be established in a number of ways, including by prescription. *Wright v. Horse Creek Ranches,* 697 P.2d 384, 387–88 (Colo.1985).

■ An easement by prescription is acquired when the use is open or notorious, continuous without effective interruption for an eighteen-year period, and either adverse or pursuant to an attempted but ineffective grant. Section 38–41–101, C.R.S.2002; *Weisiger v. Harbour,* 62 P.3d 1069, 1071 (Colo. App.2002).

To satisfy the open and notorious element, the use must be sufficiently obvious to apprise the owner of the servient estate, in the exercise of reasonable diligence, that another is making use of the burdened land so that the owner may object. However, actual knowledge by the owner need not be proved.

*Weisiger v. Harbour, supra,* 62 P.3d at 1073.

■ Further, "[i]ntermittent use on a long-term basis satisfies the requirement for open, notorious, and continuous use," and "[u]sing an easement for more than eighteen years entitles the holder to the presumption that the use was adverse." *Weisiger v. Harbour, supra,* 62 P.3d at 1072, 1073.

On review, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the jury's verdict. It is the sole province of the jury to resolve disputed issues of fact and to determine the credibility of the witnesses, the weight to be accorded the testimony, and the inferences to be drawn from the evidence. If there is competent evidence to support a jury verdict, we will not disturb it. *Robinson v. City & County of Denver,* 30 P.3d 677, 683 (Colo. App.2000).

■ Here, the jury determined, with record support, that Hartshorn indeed had a prescriptive easement over the old road "in connection with [his] guide and outfitting business ... based on the historical use made of the road during any 18 year period prior to October 20, 1989."

Three hunters testified that they had used the road to access Hartshorn's property at regular intervals from 1942 until 1994. They recounted that they and groups of men paid Hartshorn's predecessors in title for guide and outfitting services to hunt on the property.

One of Hartshorn's predecessors in title testified that, while he owned the property

from 1972 to 1983, he provided paid guide and outfitting services every year.

Neither the hunters, nor Hartshorn's predecessor in title, sought or received permission to use the road from plaintiff or his predecessors in title.

Because the jury's finding of a prescriptive easement is supported by this evidence, we will not disturb it.

■ Plaintiff asserts, however, that even if a prescriptive easement for this purpose existed, it did not encompass the degree of use exercised by defendants. We disagree.

■ The extent of a private prescriptive easement is "fixed by the use through which it was created." *Wright v. Horse Creek Ranches, supra,* 697 P.2d at 388 (quoting Restatement (First) of Property § 477 (1944)). However, "the use under which a prescriptive interest arises determines [only] the general outlines rather than the minute details of the interest." Restatement (First), *supra,* § 477 cmt. b.

In analyzing plaintiff's argument, we compare the original acquired use with the claimed additional use in terms of physical character, purpose, and the relative burden to the servient tenement. *Hayes v. City of Loveland,* 651 P.2d 466, 468 (Colo.App.1982)(citing Restatement (First), *supra,* § 478).

■ Here, the use acquired and the claimed additional use have the same purpose and physical character. The issue, then, turns on the relative burden on plaintiff's servient estate.

An increase in the burden on the servient tenement beyond that caused by the adverse use by which an easement was created is an undue increase if it is such an increase as, it may reasonably be assumed, would have provoked an interruption in the adverse use had the increase occurred during the prescriptive period.

Restatement (First), *supra,* § 478 cmt. d.

In this case, the easement had been established upon evidence showing use at times by groups of ten to twelve hunters for five days to two weeks.

Hartshorn's current use of the easement potentially encompasses 350 hunter-days per year. Inasmuch as Hartshorn testified that the average hunter stays on his property five days, he could, on average, bring in only about seventy hunters a year.

Indeed, the record shows that Hartshorn's current maximum capacity is fifteen hunters per season; the biggest group he has ever had in one season was eighteen hunters; his busiest year had fifty-eight hunters; and he calculated that his business can handle about sixty hunters per year spread over six hunting seasons.

At trial, plaintiff could only testify to episodic and isolated injury resulting from Hartshorn's current use of the easement, and the jury did not find these injuries compelling when compared to the historic burdens on plaintiff's property.

In light of these circumstances, we are not persuaded that the increased burden to the servient estate from the change in degree of use is so substantial as to require limiting the extent of the easement. *See Westland Nursing Home, Inc. v. Benson,* 33 Colo.App. 245, 252–53, 517 P.2d 862, 867 (1974)(increased volume of traffic from increased use was not enough to forfeit a prescriptive easement where increased use was not unreasonable); *see also Hayes, supra,* 651 P.2d at 468 (easements can accommodate changes in degree, rather than kind).

Plaintiff's reliance on *Wright v. Horse Creek Ranches, supra,* is misplaced. There, the supreme court refused to permit recreational and residential use of an agricultural easement. *See Wright v. Horse Creek Ranches, supra,* 697 P.2d at 390. *Wright* is distinguishable, then, because it involved a change in kind, rather than in degree, of use.

Thus, we affirm the trial court's ruling that defendants have established a prescriptive easement for their guide and outfitting business.

### B.

Plaintiff also asserts that, because state and federal laws require licenses to engage in commercial guide and outfitting activities, defendants could not establish an easement

by prescription without presenting evidence that Hartshorn's predecessors in title had licenses for guide and outfitting activities. We disagree.

When this issue surfaced right before trial, defendants objected on timeliness grounds. We, like the trial court, elect to address the issue on its merits, and we, like the trial court, conclude that the issuance of a license is irrelevant to the acquisition of this particular prescriptive right.

Ordinarily, the legality or illegality of activity conducted on the benefited property, here, Hartshorn's, is not a proper subject of inquiry when determining permissible uses under an access easement. *Gillmor v. Wright,* 850 P.2d 431, 438 (Utah 1993)(easement accessing property where hunting permits were issued for lands not zoned for hunting).

Plaintiff relies upon the following authorities: (1) part of Restatement (Third) of Property: Servitudes § 3.1 (2000), which provides that a "servitude created ... is valid unless it is illegal or unconstitutional or violates public policy"; and (2) *People v. Perez,* 192 Colo. 562, 566, 561 P.2d 7, 10 (1977), where the supreme court indicated that "[o]ne may not acquire the prescriptive right to perpetuate a public wrong."

In our view, however, these authorities address the use to which an easement may be put, not the manner in which the easement was created or acquired. *See* Restatement (Third), *supra,* § 3.1 cmt. a at 348 ("The rules stated in this Chapter assume that there are no defects in the underlying transaction that created the servitude.... These rules address the question ... whether allowing the benefits or burdens to run with the land would create such risks of social harm that a servitude should not be permitted."), cmt. c at 352 ("[a]n illegal servitude within the meaning of this section is one that is prohibited by a statute or governmental regulation," listing examples of such laws and regulations), cmt. e at 355–56 (servitudes that violate public policy are those that "threaten unreasonably the socially productive use of land or the broader public welfare").

Indeed, acceptance of plaintiff's argument would contravene the law of prescriptive easements, which permits acquisition of enforceable property rights through unlawful action, namely, trespass for the prescriptive period of time. For these reasons, we reject plaintiff's argument.

## C.

We also reject plaintiff's assertion that Hartshorn abandoned any prescriptive easement he had when he signed a licensing agreement permitting him "to expand his use of the Road to include transporting employees, guests, and invitees ... as part of a hunting/outfitting operation."

Abandonment must be established by clear, unequivocal, and decisive evidence, *Rivera v. Queree,* 145 Colo. 146, 149–50, 358 P.2d 40, 42 (1960), of affirmative acts on the part of the owner of the dominant estate manifesting an intention to abandon the easement. *Gjovig v. Spino,* 701 P.2d 1267, 1269 (Colo.App.1985).

Here, the jury was not compelled to conclude that, by executing the licensing agreement, Hartshorn abandoned his prescriptive easement. He could only abandon an easement that, at the time, he knew existed. *See Tract Dev. Servs., Inc. v. Kepler,* 199 Cal. App.3d 1374, 1385, 246 Cal.Rptr. 469, 476–77 (1988)("If it is the case that [claimants] were in fact unaware of their right to a private easement, they could hardly be held to have ever *intended* to abandon such a right."); *Sabins v. McAllister,* 116 Vt. 302, 76 A.2d 106, 110 (1950)("the finding to the effect that the defendants knew nothing about their right of way in the driveway until just prior to the bringing of this suit shows conclusively that the finding of abandonment was unwarranted"), *overruled on other grounds by Lague, Inc. v. Royea,* 152 Vt. 499, 568 A.2d 357, 359 (1989); *cf. Weisiger v. Harbour, supra,* 62 P.3d at 1073 (permissive use from 1989 to 1991 could be disregarded because a prescriptive easement was established by 1988).

## III.

Plaintiff next contends that the trial court erred in not relocating the easement to the alternate route he created. We disagree.

In *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1234–37 (Colo.2001), the supreme court recognized that there "may be some circumstances" in which easement alterations "would work no harm to the benefited owner and would greatly serve the burdened owner." The court thus accepted Restatement (Third), *supra*, § 4.8 as the correct statement of controlling legal principle for analyzing easement relocation issues. Under that approach, a burdened property owner may relocate an easement to maximize the use of his or her property, provided that such relocation does not damage the benefited estate. *See Roaring Fork, supra*, 36 P.3d at 1236.

Here, although the trial court did not have the benefit of *Roaring Fork* when it ruled, it based its decision on two seminal cases, namely, *Brown v. Bradbury*, 110 Colo. 537, 135 P.2d 1013 (1943), and *Valley Development Co. v. Weeks*, 147 Colo. 591, 364 P.2d 730 (1961). And the supreme court in *Roaring Fork* recognized that those cases "essentially applied the Restatement rule." *Roaring Fork, supra*, 36 P.3d at 1236.

The trial court considered testimony regarding the benefits and burdens of relocating the easement. Defendants presented testimony that: (1) they had no problem getting up the original road; (2) they found the new route steeper and more difficult to take up truck loads, cattle, and horses; and (3) two of Hartshorn's horses had been killed in an accident caused by the steep incline of the new route.

From this evidence, the trial court could properly conclude that relocation was improper because of the increased burdens it imposed on Hartshorn's use and enjoyment of the easement.

Further, we reject plaintiff's argument that the trial court was compelled to reconsider its ruling in light of the *Roaring Fork* decision and newly discovered evidence. First, as indicated above, although the trial court did not use *Roaring Fork* terminology, it used the essentials of a *Roaring Fork* analysis. Second, some of the newly discovered evidence concerned improvements plaintiff made to the new route after the court's

order requiring him to restore access to the original road. And third, there was no indication that the proffered newly discovered evidence could not have been presented at the evidentiary hearing held months earlier.

Under the circumstances, we cannot conclude that the trial court abused its discretion in determining not to revisit a matter for which an opportunity to fully litigate had been provided. *See Verzuh v. Rouse*, 660 P.2d 1301, 1303 (Colo.App.1982)(law of the case "is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter," quoting *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950)).

## IV.

Next, plaintiff contends that the trial court erred in ruling that the easement was wide enough to accommodate two passing vehicles. Again, we disagree.

The trial court made its width determination based on the standard set out in *Goluba v. Griffith*, 830 P.2d 1090 (Colo.App.1991).

Plaintiff notes that *Goluba* concerned the width of a public easement rather than a private easement. Nonetheless, the standards for measuring the width of private and public easements are the same; they are both measured by the historic use based on the evidence. *Compare Goluba v. Griffith, supra*, 830 P.2d at 1091 (the width of a highway acquired by adverse use is a question of fact to be determined by the character and extent of the use), *with Wright v. Horse Creek Ranches, supra*, 697 P.2d at 388 (the extent of a private prescriptive easement is fixed by the use through which it was created).

Historic use of a width for two vehicles to pass each other, however, is established by proof not of such use every day but of such use as needed during the statutory prescriptive period. *See Agric. Ditch & Reservoir Co. v. Gleason*, 686 P.2d 802, 804, 807 (Colo.App.1984)(increasing the width of an easement to include additional feet for regular maintenance and repair), *rev'd on other*

*grounds sub nom.   Hutson v. Agric. Ditch & Reservoir Co.,* 723 P.2d 736 (Colo.1986).

▇ Applying these principles here, then, the width of Hartshorn's easement for hunting access encompasses not only that part of the road frequently used, but also that part of the road regularly, albeit infrequently, used to accommodate bad road conditions and multiple vehicles.

Here, the trial judge visited the site and heard testimony from a surveyor and various individuals regarding both the current and historic width of the road and the frequency of passing vehicles.

A hunter who drove on the road nearly every other year from 1962 to 1994 with a pickup and trailer testified that he had to pass other vehicles the majority of years. Most of the time he would pass pickups, but he occasionally passed large trucks and stock trailers. He estimated that the road was about ten to twelve feet wide and about fifteen to eighteen feet wide when vehicles were passing.

Hartshorn's predecessor in title testified that he drove on the road almost every week from about 1971 to 1983 and the road was about twelve feet wide. He testified that he had passed vehicles frequently during dry conditions and infrequently during wet conditions, and many places in the road were wide enough (eighteen or more feet) for two vehicles to pass.

Hartshorn's ranch hand testified that he has been using the road since 1979, and during wet and muddy conditions, the road was about fifteen to twenty feet wide. He further testified that "literally all the road" was wide enough to accommodate two cars or small pickups passing.

Hartshorn testified that, from 1982 to about 1992, he passed vehicles infrequently, but when he did, the vehicles would slow down and pull off to the edge of the road to let him by; when conditions were muddy, vehicles would have to be driven outside the designated tracks to keep from sliding; and the width of the road was probably double in those muddy conditions. He believed the road to be, on average, about fifteen to twenty feet wide.

Plaintiff produced contradictory evidence, including, most prominently, the testimony of the surveyor that the road was only nine and a half feet wide. However, the surveyor was retained by plaintiff and acknowledged, on cross-examination, that plaintiff had instructed him to minimize the width of the road.

Determinations as to the credibility of witnesses and the weight to be afforded the evidence are issues committed to the sound discretion of the trial court as the trier of fact. Its findings must be accepted on review unless they are so clearly erroneous as not to find support in the record. *Tiger v. Anderson,* 976 P.2d 308, 310–11 (Colo.App. 1998).

▇ Because the trial court's finding of a sixteen- to twenty-foot easement is supported by evidence, we will not disturb it.

### V.

Plaintiff contends that the trial court erred in ordering him to assist in maintaining the road. We disagree.

▇ Normally, Hartshorn, as the owner of the dominant estate, would have the right and responsibility to "do whatever is reasonably necessary for the enjoyment of the easement, including [making] repairs." *See Hayes v. City of Loveland, supra,* 651 P.2d at 468. However, because plaintiff trespassed upon Hartshorn's easement by unjustifiably relocating it, the trial court could shift maintenance burdens and responsibilities to him. *See Roaring Fork, supra,* 36 P.3d at 1238.

Further, from the evidence presented at trial, it appears that plaintiff still uses the road for his own purposes. Under the circumstances, the trial court did not abuse its discretion in ordering the parties to divide the expense of maintaining the road on an equal or pro rata basis, depending upon the uses made of the road.

### VI.

Finally, plaintiff contends that the trial court erred in awarding costs to defendants. We disagree.

"[U]nless there is a statute or rule that specifically prohibits an award of costs, trial courts may exercise their discretion to award any reasonable costs to a prevailing party." *Mackall v. Jalisco Int'l, Inc.,* 28 P.3d 975, 977 (Colo.App.2001). Awardable costs include those necessarily incurred by reason of the litigation and for the proper preparation for trial. *Bainbridge, Inc. v. Douglas County Bd. of Comm'rs,* 55 P.3d 271, 274 (Colo.App.2002).

Here, plaintiff asserts that defendants did not qualify as prevailing parties, because they lost more claims than they won during the course of the litigation. We are not persuaded.

The number of claims upon which a party prevails does not determine the prevailing party for purposes of assessing costs. "Rather, the prevailing party is the one that has succeeded on a significant issue and has achieved some of the benefits sought in the lawsuit." *Mackall, supra,* 28 P.3d at 977.

The trial court found that defendants were the prevailing parties because the focal point of the litigation was the existence and the scope of the easement, upon which defendants, not plaintiff, prevailed. After reviewing the record, we agree with the trial court's assessment.

Further, contrary to plaintiff's assertions, awardable costs encompass those incurred in deposing him and in presenting expert testimony. *See Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 813 (Colo.1993)(deposition costs); *Wark v. McClellan,* 68 P.3d 574, 583 (Colo.App.2003)(deposition costs); *Mackall, supra,* 28 P.3d at 977 (expert witness fees). Neither the statutes nor the case law requires that a witness be formally offered as an expert as a condition for recovering costs.

Consequently, we find no error in the trial court's order awarding costs.

Accordingly, the judgment is affirmed.

Judge NEY and Judge LOEB concur.