**Marian OLSON and Ida Mae Brueske, Plaintiffs–Appellants and Cross–Appellees,**

v.

**HILLSIDE COMMUNITY CHURCH SBC, a Colorado non-profit corporation; the City of Golden, a Colorado municipal corporation; and the City Council of the City of Golden, Defendants–Appellees and Cross–Appellants.**

Nos. 03CA2000, 03CA2152.

Colorado Court of Appeals, Division I.

June 2, 2005.

Rehearing Denied June 30, 2005.

Certiorari Denied Dec. 5, 2005.*

---

* Chief Justice MULLARKEY would grant as to the following issues:

Whether the availability of review of abuse of discretion and failure to perform mandatory duties is a matter of state-wide concern that cannot be abridged by a home rule municipality. Whether the Court of Appeals has erroneously extended the holding of *Town of Frisco v. Baum*, 90 P.3d 845 (Colo. 2004), by applying it to a case in which the home rule municipality had not passed ordinances to implement the jurisdiction the City claims was conferred by its charter. Whether the Court of Appeals has exceeded the proper scope of appellate review and misapplied settled case law on prescriptive easements by ruling that Petitioners did not have a prescriptive easement based on its own findings of fact.

Claire B. Levy, LLC, Claire B. Levy, Boulder, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Overton Law Firm, Thomas J. Overton, Denver, Colorado for Defendant–Appellee

and Cross–Appellant Hillside Community Church SBC.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., J. Thomas MacDonald, James T. Johnson, Denver, Colorado; Light, Harrington & Dawes, P.C., Steven J. Dawes, Denver, Colorado, for Defendant–Appellee and Cross–Appellant City of Golden and the City Council of the City of Golden.

Opinion by Judge HAWTHORNE.

In this action for enforcement of municipal zoning ordinances and creation of a prescriptive easement, plaintiffs, Marian Olson and Ida Mae Brueske, appeal the trial court's orders discharging an order to show cause and finding that they failed to prove the existence of a prescriptive easement. Defendants, Hillside Community Church SBC and the City of Golden, cross-appeal a trial court order finding that an addition to Hillside's church was built in violation of the Golden Municipal Code and ordering that it be removed. We affirm in part, vacate in part, and remand with instructions.

The underlying facts in this case are largely undisputed. Plaintiffs own land adjacent to a church in Golden. After Hillside began construction of an addition without complying with portions of the Golden Municipal Code (GMC) and the Uniform Building Code (UBC), plaintiffs complained to Golden. Golden permitted Hillside to continue construction and granted Hillside a building permit, a height variance, and a certificate of occupancy. After the addition was substantially completed, plaintiffs filed suit in the Jefferson County District Court, asserting a claim for a prescriptive easement; seeking injunctive and mandatory relief under C.R.C.P. 65 and 106 and GMC 18.08.050; and claiming Golden had violated the Establishment and Due Process Clauses of the United States Constitution.

The trial court entered findings in favor of plaintiffs on their claims under the GMC and the Due Process Clause and in favor of defendants on the prescriptive easement claim, and ordered that Hillside's certificate of occupancy be vacated pending approval of a special use permit (the 1999 order). Plaintiffs appealed, and a division of this court affirmed the trial court order in part and reversed in part in *Olson v. Hillside Community Church,* 42 P.3d 52 (Colo.App.2001). The Colorado Supreme Court reversed the division's ruling on the due process issue in *Hillside Community Church v. Olson,* 58 P.3d 1021 (Colo.2002), and remanded the case.

During the pendency of that appeal, Golden granted Hillside's requests for a special use permit, rezoning as a planned unit development, and a new certificate of occupancy. Plaintiffs filed a motion requesting an order to show cause why Golden should not be held in contempt of the 1999 order. Because the trial judge was unavailable at the time of the hearing, plaintiffs' show cause motion was heard by a different judge.

The contempt judge apparently found that although Golden had not literally complied with the 1999 order, its failure to do so was excusable as an exercise of Golden's discretion. On appeal, a division of this court reversed the contempt judge's order and remanded the case for further findings. *Olson v. Hillside Cmty. Church,* 2003 WL 21100723 (Colo.App. No. 02CA0743, May 15, 2003)(not published pursuant to C.A.R. 35(f)).

The contempt order and the 1999 order were both remanded to the Jefferson County District Court. The judges who had issued the orders each reconsidered the matter on remand and arrived at contradictory conclusions. The contempt court found that Hillside had brought the addition into compliance with the GMC and the UBC and discharged its order to show cause, while the trial court found that Hillside had failed to bring the addition into compliance with the same ordinances and ordered the addition removed. This consolidated appeal followed.

I.

Golden contends that, to the extent that plaintiffs' claims arise under the GMC, they must be dismissed because the trial court lacked subject matter jurisdiction over those claims. We agree.

## A.

A judgment rendered by a court lacking subject matter jurisdiction is void, and defects in subject matter jurisdiction may be raised at any time. *In re Water Rights of Columbine Ass'n,* 993 P.2d 483, 488 (Colo. 2000); *In re Marriage of Mallon,* 956 P.2d 642, 645 (Colo.App.1998); *see also Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 513 (Colo.1986) (noting that subject matter jurisdiction may be raised for the first time before the Colorado Supreme Court).

Subject matter jurisdiction cannot be waived or conferred by consent, estoppel, or laches, prior to the resolution of all issues including any subsequent appeals. *Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1206 (Colo.2000); *see also In re Marriage of Mallon, supra,* 956 P.2d at 645–646 (noting that subject matter jurisdiction may not be raised to attack collaterally a final judgment); *Don J. Best Trust v. Cherry Creek Nat'l Bank,* 792 P.2d 302, 304 (Colo. App.1990) (noting that the doctrine of laches cannot preclude an attack upon a void judgment).

During the pendency of this litigation, the Colorado Supreme Court announced its opinion in *Town of Frisco v. Baum,* 90 P.3d 845 (Colo.2004). In *Baum,* the supreme court addressed the issue whether a home rule city possessed authority under the Colorado Constitution to grant its municipal court "exclusive original jurisdiction over all matters arising under [the town's] Charter, the ordinances, and other enactments of the Town." Harmonizing provisions of articles VI and XX of the Colorado Constitution relating to the jurisdiction of the district courts and the powers of home rule cities to establish municipal courts, the supreme court held that "[w]hen a municipality exercises jurisdiction to address local and municipal matters in its municipal court, the district court will consequently be denied original jurisdiction over those matters." *Town of Frisco v. Baum, supra,* 90 P.3d at 846, 849.

## B.

Plaintiffs argue that relief in the nature of mandamus and mandatory injunctive relief are not available under the GMC or the Colorado Municipal Court Rules of Procedure and that therefore, cases filed by private parties seeking relief under C.R.C.P. 65 and 106 must necessarily be filed in a district court. We disagree.

In *Baum,* the plaintiff filed a complaint pursuant to C.R.C.P. 106(a)(4) in the district court, challenging the approval of a conditional land use development application. The district court dismissed the case for lack of subject matter jurisdiction, and the supreme court affirmed the district court's action. *Town of Frisco v. Baum, supra,* 90 P.3d at 846.

As in *Baum,* plaintiffs here seek relief pursuant to C.R.C.P. 106 by review of a home rule city's application of a land use ordinance. Golden is a home rule city, and § 9.2 of its charter provides in pertinent part that "[t]here shall be a municipal court vested with exclusive original jurisdiction of all causes arising under the ordinances of the city and as may be conferred by law."

By the plain terms of the Golden City Charter, the municipal court has exclusive jurisdiction over all causes of action arising under the GMC. Plaintiffs' second, third, and fourth claims for relief all assert that Golden and Hillside have failed to comply with various provisions of the GMC. Because those claims arise under the GMC, the district court cannot hear them in the first instance.

Plaintiffs also argue that municipal courts lack the power to grant relief in the nature of remedial or original writs based on an opinion of a division of this court. In *City of Englewood v. Parkinson,* 703 P.2d 626, 628 (Colo.App.1985), a division of this court held that because municipal courts are creatures of statute, "the Englewood municipal court is without authority to engage in proceedings in the nature of original or remedial writs and is without authority to decide civil claims for money."

The division in *Parkinson* reached its conclusion in reliance upon *Denver County Court v. Lee,* 165 Colo. 455, 439 P.2d 737 (1968), which held that a superior court lacked the authority to grant relief in the

nature of an original or remedial writ. Superior courts, unlike municipal courts, are purely creatures of statute. The municipal courts of home rule cities, however, are authorized by the Colorado Constitution, which specifically grants home rule cities the authority to define their municipal courts' jurisdiction over local and municipal matters. *See Town of Frisco v. Baum, supra,* 90 P.3d at 846–47. To the extent that the *Parkinson* division relied on *Lee* in reaching its conclusion that municipal courts lack authority to provide relief in the nature of an original or remedial writ, we are bound by the supreme court's opinion in *Baum.*

### C.

▇ Further, to the extent plaintiffs argue that various GMC ordinances required them to bring their claim in the district court, we conclude that those ordinances were without effect, because the charter of a home rule city is effectively its constitution and its ordinances may not conflict with its charter. *Glenwood Post v. City of Glenwood Springs,* 731 P.2d 761, 762 (Colo.App.1986).

### D.

▇ Relying on the supreme court's statement that "[w]here a municipality has not exercised jurisdiction [over local and municipal matters in its municipal court], however, the district court may hear local and municipal matters in the first instance," *Town of Frisco v. Baum, supra,* 90 P.3d at 849, plaintiffs also argue that Golden has not exercised jurisdiction over this matter because it allowed the case to proceed in the district court. We reject plaintiffs' argument because, as already noted, subject matter jurisdiction cannot be waived or conferred by estoppel. *See Mesa County Valley Sch. Dist. No. 51 v. Kelsey, supra.*

Moreover, we read the supreme court's mention of a municipality's "exercise of jurisdiction" to mean the exercise of its constitutional authority to create a municipal court and vest it with jurisdiction over matters of local concern. We therefore conclude that plaintiffs' argument misapprehends how a home rule city exercises its authority to confer to its municipal court jurisdiction over local matters. As the supreme court noted, the issue before it in *Baum* was "whether [the town's] grant of jurisdiction [to its municipal courts] was a proper exercise of municipal authority under the Colorado Constitution." *Town of Frisco v. Baum, supra,* 90 P.3d at 846. Whether the municipal court had ever heard a case involving zoning regulations is immaterial to the question of whether the city exercised its authority. The exercise of authority occurs when the city creates its municipal court and grants it exclusive original jurisdiction over its ordinances. Here, Golden adopted its city charter in 1967. When it adopted its charter, it exercised jurisdiction over all causes arising under its ordinances.

### E.

▇ We also reject plaintiffs' contention that Golden's motion to dismiss is untimely. Relying on *In re Marriage of Mallon, supra,* 956 P.2d at 645, plaintiffs correctly argue that a party may not collaterally attack a final judgment when it had a prior opportunity to challenge the subject matter jurisdiction during the original action.

▇ "A judgment is deemed final when it ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do except to execute the judgment." *Civil Serv. Comm'n v. Carney,* 97 P.3d 961, 967 (Colo.2004).

▇ Here, the 1999 order never became a final judgment because it is still on direct appeal. As the Third Circuit Court of Appeals noted in *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.,* 177 F.3d 210, 220 (3d Cir.1999), "If there is no final judgment outstanding into which the defense of lack of jurisdiction can merge and proceedings are continuing, *res judicata* [and collateral estoppel do] not operate to bar consideration of a challenge to the jurisdiction of the court." *See also In re Marriage of Mallon, supra* (noting that the modern rule gives finality substantially greater weight than validity).

Golden's motion is timely because it does not collaterally attack a final judgment.

We therefore conclude that because, in its charter, Golden exercised its authority to address local and municipal matters in its municipal court and granted that court exclusive original jurisdiction over claims arising under its ordinances, the district court was without jurisdiction to hear plaintiffs' claims relating to the application and enforcement of Golden's municipal ordinances.

## II.

We now turn to plaintiffs' sole remaining claim. Plaintiffs contend that the trial court erred when it concluded that they had failed to prove the existence of a prescriptive easement by a preponderance of the evidence. We disagree.

We defer to the trial court's factual findings concerning the existence of a prescriptive easement where they are supported by competent evidence in the record. We draw all reasonable inferences in favor of the prevailing party and defer to the fact finder's decision on the credibility of witnesses; sufficiency, probative effect, and weight of the evidence; and inferences and conclusions drawn from conflicting evidence. *Weisiger v. Harbour,* 62 P.3d 1069, 1071 (Colo.App.2002).

To prove the existence of an easement by prescription, a party must prove open and notorious use, continuing without effective interruption for an eighteen-year period, which is either adverse or pursuant to an attempted but ineffective grant. *McIntyre v. Bd. of County Comm'rs,* 86 P.3d 402, 407 (Colo.2004); *Clinger v. Hartshorn,* 89 P.3d 462, 466 (Colo.App.2003).

A use is open and notorious if it is "sufficiently obvious to apprise the owner of the servient estate, in the exercise of reasonable diligence, that another is making use of the burdened land so that the owner may object. However, actual knowledge by the owner need not be proved." *Clinger v. Hartshorn, supra,* 89 P.3d at 465 (quoting *Weisiger v. Harbour, supra,* 62 P.3d at 1073).

Further, "Intermittent use on a long-term basis satisfies the requirement for open, notorious, and continuous use," and "[u]sing an easement for more than eighteen years entitles the holder to the presumption that the use was adverse." *Clinger v. Hartshorn, supra,* 89 P.3d at 465 (quoting *Weisiger v. Harbour, supra,* 62 P.3d at 1072–73).

Here, the trial court found that plaintiffs had failed to prove that their use was notorious, adverse, and exclusive. However, it is not necessary to prove exclusive use to establish an easement by prescription. *See Weisiger v. Harbour, supra,* 62 P.3d at 1073.

Nonetheless, this error does not require reversal, even in light of the presumption of adversity, because there was evidence in the record from which the trial court could and did conclude that plaintiffs' use was not open and notorious.

One witness testified that he had owned a lot near the church from 1977 to 1998. He testified that during the time he lived in the area, the claimed easement was primarily used by Olson's predecessor in interest and Brueske. The witness also noted:

> The one thing that you would have found up there that I always kind of marveled at because I walked [there] every day was the fact that the people are very careful about going through there when it was muddy or wet. It was heavy clay in through there and they would very seldom go through it if there was any way of tearing up the property. They were conscientious about not doing damage to the church property.

One of the plaintiffs also testified that there was nothing visible on the ground indicating the location of the claimed easement. Further, plaintiffs' expert witness testified on direct examination that although he could discern the location of the claimed easement, "it might not be obvious to the untrained eye."

From this testimony, the trial court could conclude that plaintiffs' use of the claimed easement was not sufficiently obvious to put the church on notice of it. Although plaintiffs had gates in their back fences, the trial court could properly conclude that they restricted their use so as to leave little or no trace on the church's property. In fact, the

testimony of plaintiffs' expert indicated that special training was required to identify the location of the alleged easement. Thus, the trial court's conclusion is supported by competent evidence in the record.

We therefore agree with the trial court that plaintiffs failed to establish the existence of a prescriptive easement by a preponderance of the evidence.

The orders are affirmed as to plaintiffs' claim for a prescriptive easement and vacated as to plaintiffs' claims under the GMC, and the case is remanded with instructions to dismiss plaintiffs' claims arising under the GMC for lack of subject matter jurisdiction.

Judge MARQUEZ and Judge GRAHAM concur.