25CA1087 L and M v Proctor 04-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1087
Delta County District Court No. 23CV30017
Honorable Mary E. Deganhart, Judge

L and M Fuller Family Partnership, LLLP, a Colorado limited liability limited partnership, and L and M Fuller, LLC, a Colorado limited liability corporation,

Plaintiffs-Appellees,

and

Dakota Darnall,

Third Party Defendant-Appellee,

v.

Kathrine Sue Proctor, Acacia Ator, Orin Proctor, and Nadia Van Haele,

Defendants-Appellants.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 23, 2026

Brian Kidnay, P.C., Brian Kidnay, Montrose, Colorado, for Plaintiffs-Appellees and Third Party Defendant-Appellee

Conerly & Callahan, LLC, Mindi L. Conerly Millican, Ryan F. Callahan, Montrose, Colorado, for Defendants-Appellants

¶ 1     In this easement dispute, defendants, Kathrine Sue Proctor, Acacia Ator, Orin Proctor, and Nadia Van Haele (collectively, the Proctor parties), appeal the district court's judgment granting a prescriptive easement across their property to plaintiffs, L and M Fuller Family Partnership, LLLP, and L and M Fuller, LLC (collectively, the Fuller parties).  We affirm in part, reverse in part, and remand with directions.

## I.     Background

¶ 2     The Proctor and Fuller parties own real property near one another.  Part of the Fuller parties' property (the Fuller property), called the Upper Deeded, is separated from the Proctor parties' property (the Proctor property) by Bureau of Land Management (BLM) land.  To the other side of the Upper Deeded is National Forest Service (NFS) land, where the Fuller parties exercise federal grazing permits.  The Fuller parties also have rights in the Eagle Ditch, which traverses the Proctor property and has a headgate on the adjacent BLM land.  This case concerns an easement across the Proctor property, which the Fuller parties and their predecessors have historically used to access the Upper Deeded and the NFS land

beyond, as well as to access the headgate on the Eagle Ditch and to maintain the Eagle Ditch.

¶ 3 In 2002, the Proctor parties executed a settlement agreement with the Fuller parties' predecessor in interest, Connie Green, relocating the easement to its current location.[1] The settlement agreement also provided that the Proctor parties would install gates along the easement at locations they deemed appropriate.

¶ 4 The Proctor parties also executed an easement deed, quitclaiming the access easement to Green and her successors and assigns. The parties dispute whether the access easement is an easement appurtenant (that runs with the land) or an easement in gross (that does not).

¶ 5 In 2022, the Proctor parties prohibited the Fuller parties from further use of the access easement. The Fuller parties brought a claim for adverse possession, seeking a prescriptive easement based

---

[1] The parties and the district court refer to the easement differently — as the Green Easement, the Access Easement, and the Current Easement. Because the original location of the easement is not at issue in this appeal, we refer to the easement in its current location as "the access easement." As discussed further below, we refer to the additional prescriptive easement located along the Eagle Ditch as "the ditch easement."

on their historical use of the access easement for hunting, recreational, and agricultural purposes, as well as the ability to access the headgate of the Eagle Ditch and conduct maintenance on the ditch.

¶ 6   The Proctor parties brought counterclaims against the Fuller parties for trespass and to quiet title pursuant to C.R.C.P. 105.[2]

¶ 7   The district court held a bench trial and received written closing arguments. In a written order, it concluded that the Fuller parties established a prescriptive easement across the Proctor property for all historical uses (the access easement), including exercising grazing permits on adjacent NFS land, hunting, and operating motorized vehicles and equipment. For purposes of this prescriptive easement, the court relied on the Fuller parties' and their predecessors' use of the access easement from 2002 to 2022, not the easement deed. The court further concluded that the Fuller parties proved a prescriptive easement along the Eagle Ditch for access to the headgate and maintenance of the ditch (the ditch easement). Based on its conclusion that five gates the Proctor

---

[2] The Proctor parties also brought trespass claims against a third-party defendant who is not a party to this appeal.

3

parties had installed along the ditch easement unreasonably interfered with the Fuller parties' rights, the court ordered the Proctor parties to remove those gates.

¶ 8     The court denied the Proctor parties' counterclaims.

¶ 9     The Proctor parties appeal, arguing that the district court erred by imposing the ditch easement and ordering removal of the five gates. They further challenge the court's determinations that the Fuller parties established the right to use the access easement for grazing cattle on NFS land, hunting, and operating motorized vehicles and equipment. We agree with the Proctor parties' hunting argument but disagree with their other arguments. We therefore affirm in part, reverse in part, and remand for further proceedings.

## II.     Legal Principles and Standard of Review

¶ 10    A prescriptive easement is a right to use another's land for a specified purpose. *LR Smith Invs., LLC v. Butler*, 2014 COA 170, ¶ 14. It is established when the prescriptive use is (1) open or notorious; (2) continued without effective interruption for at least eighteen years; and (3) as relevant here, adverse. *Lo Viento Blanco, LLC v. Woodbridge Condo. Ass'n*, 2021 CO 56, ¶ 20. A prescriptive easement claimant that shows they have possessed the easement

4

for more than the statutory period is entitled to a presumption of adverse use. *Id.* at ¶ 24. This presumption can be rebutted, however, if the landowner shows that the claimant's use was permissive at any time during the statutory period. *Id.*

¶ 11    The scope or extent of an easement is determined based on the use through which it was created. *Wright v. Horse Creek Ranches,* 697 P.2d 384, 388 (Colo.1985) (adopting Restatement (First) of Prop. § 477 (A.L.I. 1944)). To ascertain whether a particular use is permissible under a prescriptive easement, "a comparison must be made between such use and the use by which the easement was created with respect to (a) their physical character, (b) their purpose, [and] (c) the relative burden" they cause on the property burdened by the easement. *Id.* (quoting Restatement (First of Prop. § 478). While the beneficiary of a prescriptive easement is permitted "to vary the use of the easement to a reasonable extent," this flexibility of use is limited by a concern for the degree to which the variance increases the burden caused by the easement. *Id.* at 388-39; *see also Lazy Dog Ranch v. Telluray Ranch Corp.,* 923 P.2d 313, 316 (Colo. App. 1996) (while an easement owner may do what

is reasonably necessary to permit full use of the easement, they cannot expand its extent).

¶ 12     The district court's finding of a prescriptive easement presents a mixed question of fact and law.  *See Lo Viento*, ¶ 16.  While we review the court's legal conclusions de novo, we review its factual findings for clear error.  *Id.* at ¶¶ 16-17.  We defer to the court's decisions on the credibility of witnesses; sufficiency, probative effect, and weight of the evidence; and inferences and conclusions drawn from conflicting evidence.  *Weisiger v. Harbour*, 62 P.3d 1069, 1071 (Colo. App. 2002).  When the court bases its factual findings on competent evidence in the record, we will not disturb them.  *Lo Viento*, ¶ 24.

### III.   Ditch Easement

¶ 13     The Proctor parties first argue that the court erred by imposing the ditch easement because the Fuller parties' access to the Eagle Ditch was not adverse.  They point to Kathrine Proctor's testimony that she permitted third-party water users to access the Eagle Ditch and that she understood that water users are legally authorized to access ditches.  They further argue that they could not have sustained a trespass claim against the Fuller parties based

on use of the Eagle Ditch and the only reasonable explanation for the Proctor parties' installation of gates along the ditch was to permit ditch users' right of access. We are not persuaded.

¶ 14 As an initial matter, whether the Proctor parties would succeed on a trespass claim based on the Fuller parties' use of the ditch easement is not dispositive of the issue of adverse use. Instead, whether use is adverse is a factual question that requires the court to evaluate witness credibility and weigh the evidence before it.

¶ 15 The district court determined that the Proctor parties presented no credible evidence to rebut the presumption of adverse use. It found Kathrine Proctor's testimony unreliable, noting that it lacked detail, was made only in response to leading questions, and was not substantiated by any other testimony. Regarding the gates, the court noted that numerous witnesses testified they were used to constrain cattle (not to provide or prohibit ditch access), and because they were consistently left open or unlocked, they were ineffective at serving this purpose. Because there is evidence in the record to support the court's determination that the Fuller parties

established adverse use of the ditch easement, we may not disturb it.

¶ 16     Next, the Proctor parties argue that the district court had no procedural avenue to impose the ditch easement or to order gate removal because the Fuller parties stipulated to seeking only one prescriptive easement. We disagree.

¶ 17     True, the parties stipulated that the Fuller parties were "only seeking a single prescriptive easement in the area of the [access easement], and in no other location on the Proctor Property." But as discussed, the Fuller parties' claim to the access easement was based in part on their need to access the Eagle Ditch headgate and conduct maintenance on the Eagle Ditch. The primary manager of L and M Fuller, LLC's operations testified that the five gates along the Eagle Ditch made it significantly more difficult to maintain the ditch and that the Fuller parties specifically asked the court to order their removal. The Proctor parties also brought a counterclaim to quiet title under C.R.C.P. 105, requesting that the court order the Fuller parties "to cease damaging gates and fences protecting the Proctor Property."

¶ 18    Thus, the issue of the Fuller parties' right to move along the Eagle Ditch, and whether the gates interfered with that right, was plainly before the court.  In fact, the Proctor parties' counterclaim to quiet title *required* the court "to provide a complete adjudication of the rights of all parties" and to grant "full and adequate relief so as to completely determine the controversy."  *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 612 (first quoting *Hopkins v. Bd. of Cnty. Comm'rs*, 564 P.2d 415, 420 (Colo. 1977); and then quoting C.R.C.P. 105(a)).  This is the "manifest intent" of a quiet title action under C.R.C.P. 105.  *Id.* (quoting *Hopkins*, 564 P.2d at 420)); *see also Hinojos v. Lohmann*, 182 P.3d 692, 702 (Colo. App. 2008) (the court "should resolve all issues apparent from the evidence" (citing *Keith v. Kinney*, 961 P.2d 516, 519 (Colo. App. 1997))).

¶ 19    The Proctor parties do not otherwise challenge the court's finding of a prescriptive easement along the Eagle Ditch or its determination that the gates constituted an unreasonable

interference with the ditch easement. Accordingly, they are not entitled to relief.[3]

## IV. Access Easement

### A. The Fuller Parties' Exercise of NFS Grazing Permits

¶ 20    The Proctor parties next argue the district court erred by determining that the Fuller parties could use the access easement to graze cattle on NFS land located beyond the Upper Deeded. We disagree.

¶ 21    The district court determined that the Fuller parties' open, continuous, and adverse use of the access easement included their historical use to exercise grazing permits on adjacent government property. The court further concluded that such use did not create an additional burden on the access easement, noting that the Fuller parties were not offering third parties the right to use it.

¶ 22    The Proctor parties do not challenge the court's factual determination that the Fuller parties and their predecessors

---

[3] Because it is raised for the first time in their reply brief, we do not consider the Proctor parties' argument that the district court erred because the Fuller parties failed to name the Eagle Ditch Company as an indispensable party in their complaint. *See S. Conejos Sch. Dist. RE-10 v. Wold Architects Inc.*, 2023 COA 85, ¶ 34 n.4.

historically used the access easement to exercise federal grazing permits. Instead, they assert that the court erred as a matter of law because it effectively created a separate property interest in the Fuller parties' grazing permits and established a prescriptive easement to benefit the government. They further argue the court's ruling will allow the Fuller parties to overburden the access easement by bringing more cattle over it, for longer stretches of time, than they would have been entitled to otherwise.

¶ 23    To support their argument, the Proctor parties point to the well-established principle that an easement holder may not use the easement to benefit property other than the dominant estate. *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998) (the property that benefits from an easement is generally called the dominant estate). "This rule reflects the likely intent of the parties by setting an outer limit on the potential increase in use of the easement brought about by normal development of the dominant estate." *Id.* at 1238 (quoting Restatement (Third) of Prop.: Servitudes § 4.11 cmt. b (A.L.I., Tentative Draft No. 4, 1994)); *see also Riddell v. Ewell*, 929 P.2d 30, 32 (Colo. App. 1996) (citing the same "general rule"). The Proctor parties further rely on out-of-

11

state authority holding that the "expanded use" of an easement to benefit another property constitutes an impermissible overburdening of the easement as a matter of law. *Il Giardino, LLC v. Belle Haven Land Co.*, 757 A.2d 1103, 1113 (Conn. 2000).

¶ 24     But, as discussed, the Fuller parties' use of the easement to graze cattle on NFS land is not an expanded use. Nor does the use benefit the NFS or any other owners of adjacent property. Instead, the district court determined that the ability to move cattle into grazing areas adjacent to the Upper Deeded was among the historical benefits to *the Fuller property* afforded by the access easement.[4] The record again supports the court's determination that there is no increase or added burden to the Proctor property resulting from the Fuller parties' continuation of that historical use. We therefore defer to it.[5]

---

[4] For this reason, the Proctor parties' concern that a subsequent purchaser of the Fuller parties' federal grazing permits, but not their property, would be entitled to use the access easement is misplaced.

[5] The Proctor parties also suggest that the district court overreached because the United States government was an indispensable party not included in the action. Again, because this argument was raised for the first time in their reply brief, we do not address it. *See S. Conejos Sch. Dist. RE-10*, ¶ 34 n.4.

12

## B.     Continuity of Hunting Use

¶ 25     The Proctor parties also assert that the district court failed to properly determine whether the Fuller parties' use of the access easement for hunting was continuous and adverse.  On this point, we agree.

### 1.     Additional Facts

¶ 26     When the Proctor parties quitclaimed the access easement to Green, these parties agreed that it could "be used only for cattle ranching and occasional recreational use," not including "use by hunters or for hunting related purposes."

¶ 27     The Proctor parties submitted deposition testimony from Steven Coury, one of the Fuller parties' predecessors, into evidence. Coury owned the Fuller property from 2006 to 2017.  In his deposition, Coury stated that he was "a stickler" for the easement deed restrictions and that, while he hunted on the Upper Deeded, he used another means of access (called Pipeline Road) to access the Upper Deeded for that purpose.  Coury specifically stated that he did not use the access easement to access the Upper Deeded for hunting purposes, and he prohibited his ranch hand, Fred

Ferganchick, from the same, communicating that all hunters had to use Pipeline Road.

¶ 28    At trial, Ferganchick testified that he hunted on the Upper Deeded and leased it out to commercial hunters. He testified that he used Pipeline Road to get to the Upper Deeded for hunting purposes but that it's "almost impossible to take that in wintertime and go anywhere on that road." He also indicated that he did not fully understand the easement deed restrictions.

¶ 29    In written closing arguments, the Proctor parties argued that the Fuller parties could not establish a prescriptive easement in the access easement for hunting because such use would be in direct violation of the easement deed. Based on the easement deed, they argued that any use of the access easement was "subordinated" or inferior to the Proctor parties' hunting restrictions. They further argued that any use of the access easement for hunting "by rogue ranch hands," made without the easement holder's approval, could not establish continuous use.

¶ 30    The district court rejected the Proctor parties' argument because it was not supported by authority and because "[t]o require that any evidence of adverse use must only be through the actual

owner of the property [wa]s not practical nor grounded in reality."
The court noted that the Fuller parties' predecessors were largely
"absentee owners," and that their ranch managers and ranch hands
offered credible and compelling testimony regarding how the access
easement was used. It also rejected any suggestion by the Proctor
parties that these individuals' testimony should be discredited
because they were "merely ranch hands."

## 2. Discussion

¶ 31 At the outset, we reject the Proctor parties' argument that the
principle of subordination defeats the Fuller parties' prescriptive
easement claim. "At its core, subordination 'is essentially a matter
of status between parties' and 'establishes priorities between those
parties by some means other than the automatic or statutory
scheme.'" *City of Englewood v. Burlington Ditch, Reservoir & Land
Co.*, 235 P.3d 1061, 1068 (Colo. 2010) (citation omitted). The
Proctor parties base their subordination argument on the hunting
restrictions in the easement deed. But the district court concluded
the easement deed conveyed an easement in gross and therefore did
not run with the property. *See Lewitz v. Porath Fam. Tr.*, 36 P.3d
120, 122 (Colo. App. 2001). The court based its finding of a

prescriptive easement on the uses that occurred after 2002, unencumbered by the easement deed. The Proctor parties do not develop an argument that the court erred in this regard, so we do not consider it further. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 (we do not consider undeveloped arguments), *aff'd*, 2021 CO 56.

¶ 32 As they did before the district court, the Proctor parties also argue that the Fuller parties should not have been permitted to count Ferganchick's or other agents' use of the access easement for hunting because those uses were performed without permission from the easement holder with whom the Fuller parties share privity. The Proctor parties assert that the court misapprehended their argument on this issue, believing it to be about how much weight to give a ranch hand's testimony as opposed to whether, as a legal matter, the Fuller parties were entitled to count activities performed by an unauthorized agent as part of historical use. We agree that the district court did not address the argument before it.

¶ 33 The district court properly concluded that an easement holder may rely on their predecessors' agents to establish prior use. *See* Restatement (Third) of Prop: Servitudes § 2.16 cmt. e (A.L.I. 2000)

16

("Prescriptive uses need not be made personally by the owner of the claimed prescriptive servitude, but may be made by tenants, customers, guests, and visitors of the claimant."). But the court did not resolve the legal question of whether such reliance is appropriate if the agents were acting outside the scope of their employment or without the consent of the prior easement holders. Reviewing this question de novo, we agree with the Proctor parties that adverse use based on an agent's use of an easement must be within the terms of his agency with the easement holder. *See id.* ("[U]se by strangers and members of the general public does not qualify as prescriptive use to establish servitude rights in an individual."); *see also Ammer v. Ariz. Water Co.*, 818 P.2d 190, 195 (Ariz. Ct. App. 1991) (to inure to the property owner's benefit, a tenant's adverse use must be "within the terms of his tenancy").

¶ 34   Importantly, however, the court also left unanswered the factual questions of whether Ferganchick or other agents used the access easement to hunt on the Upper Deeded, and whether they did so with permission from Coury or any other easement holders. Indeed, the court did not address Coury's deposition testimony at all. While Coury stated that he allowed Ferganchick to conduct

commercial hunting on the Upper Deeded, he was also unequivocal that hunters accessed the Upper Deeded "[t]hrough the other way" and that Ferganchick was not authorized to use the access easement for hunting purposes. Whether the Fuller parties established continuous adverse use of the access easement for hunting purposes turns on the factual question of whether privity existed between the Fuller parties and their predecessors' agents. We cannot resolve that factual question in the first instance. *See Kruse v. Town of Castle Rock,* 192 P.3d 591, 601 (Colo. App. 2008) (appellate courts are not the fact finder).

¶ 35 Because the district court did not address the legal question before it, we conclude its finding of continuous adverse use for hunting purposes was improper. We therefore reverse this portion of the court's judgment and remand for further factfinding. On remand, the court should address the effect, if any, of Coury's deposition testimony and determine whether Ferganchick's or other agents' use of the access easement for hunting purposes was authorized by the easement holder.

### C. Use of Motorized Vehicles and Equipment

¶ 36    Finally, the Proctor parties argue that the district court erred by including the use of motorized vehicles other than all-terrain vehicles (ATVs) and heavy motorized equipment in the access easement. We conclude reversal is not warranted.

¶ 37    The evidence at trial showed that the Fuller parties' predecessor from 2002 to 2006, Mike Carver, crossed the access easement only on foot, on horseback, and by ATV. By contrast, subsequent property owners and their agents testified that they brought trucks, trailers, bulldozers, backhoes, and a road grader across the access easement. In their written closing arguments, the parties disputed whether the Fuller parties' historical use of the access easement included the use of non-ATV vehicles and motorized equipment. Recognizing Carver's testimony, the district court concluded it did.

¶ 38    The Proctor parties argue the court erred because it failed to place a restriction on the Fuller parties' use of the access easement despite finding that Carver's use was limited to ATVs. They argue the court was required to compare the character, purpose, and burden of the different motorized uses and balance them against

19

the access easement's original purpose. The Fuller parties, in turn, argue that they established a general access easement serving their property, and this necessarily includes access by different methods as may be appropriate for different uses. The Fuller parties further assert that the difference between ATVs and other motorized vehicles and equipment is one of degree, not kind, and therefore all these uses fall within the prescriptive easement.

¶ 39 Initially, we agree with the Fuller parties that the difference between using ATVs to cross the access easement and using trucks, backhoes, and other equipment to do the same is a difference in degree, not kind. *See Clinger v. Hartshorn*, 89 P.3d 462, 467 (Colo. App. 2003) (differences in degree include an increase in the number of people, volume of traffic, or number of electrical conductors using an easement). Even so, the question remains whether this change unreasonably burdens the access easement. *See Cielo Vista Ranch I, LLC v. Alire*, 2018 COA 160, ¶¶ 124-125 (changes in degree favor a finding that the current use is within the easement's scope, but an increased burden cannot be unreasonable). In this regard, we disagree with the Fuller parties' argument that access is access, whatever the means. *Cf. Clinger*, 89 P.3d at 467 (considering

20

whether a change in the degree of use was so substantial as to require limiting the easement's extent).

¶ 40     To be sure, the district court did not make explicit findings on the physical character, purpose, or relative burden of ATVs versus non-ATVs, nor did it expressly state a legal conclusion that the change that occurred after 2006 was reasonable.  Nevertheless, the court determined that the Fuller parties established historical use of the access easement to conduct agricultural and ranching activities on the Upper Deeded and to access and maintain the Eagle Ditch.  And it included motor vehicles in the access easement's scope, notwithstanding Carver's testimony.  On this basis, we conclude the district court made a determination, albeit implicit, that the change in use from ATVs to other motorized vehicles and equipment was reasonable and not unduly burdensome.  *See Foster v. Phillips*, 6 P.3d 791, 796 (Colo. App. 1999) (a court's findings may be implicit, so long as they are sufficient for appellate review).  On appeal, the Proctor parties argue that the court did not apply the correct legal standard.  But they make no meaningful attempt to argue that the use of non-ATV motorized vehicles and equipment is outside the access easement's

scope. They point to Carver's testimony that he believed introducing non-ATV vehicles and other motorized equipment would "tear up" the access easement. But Carver's personal belief does not establish that the subsequent change in use was in fact unreasonable. The Proctor parties also argue that the Fuller parties' use of the access easement creates a "heightened burden on the soft, dirt trial [that] threatens [the Proctor parties'] ability to also access along this travelled way and increases wear and tear." But they do not explain how their use of the access easement is impeded or why additional wear and tear constitutes an unreasonable interference.

¶ 41 An easement holder may make any use of an easement that is reasonably necessary to permit its full use without unreasonably interfering with the property owner's enjoyment of their property. *See Amada Fam. Ltd. P'ship v. Pomeroy*, 2021 COA 73, ¶ 67. Because the Proctor parties have not shown that the Fuller parties' use of the access easement constitutes an unreasonable interference with their property rights, we conclude they are not entitled to relief.

## V.    Attorney Fees

¶ 42    The successful portion of the Proctor parties' appeal cannot be characterized as frivolous, and their remaining arguments present a coherent assertion of error, even if they are unsuccessful.  We therefore decline the Fuller parties' request for an award of attorney fees.

## VI.    Disposition

¶ 43    The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

JUDGE JOHNSON and JUDGE GOMEZ concur.