**WESTPAC ASPEN INVESTMENTS, LLC, a Colorado limited liability company, Plaintiff–Appellee,**

v.

**RESIDENCES AT LITTLE NELL DEVELOPMENT, LLC, a Delaware limited liability company; Aspen Land Fund, LLC; CWA Development, LLC; Centurion Partners Aspen, LLC; Centurion Partners, LLC; Whitehall Street Global Real Estate Limited Partnership 2001; Whitehall Parallel Global Real Estate Limited Partnership 2001; and W2001 Nell Real Estate, LLC, Defendants–Appellees,**

and

**Preston B. Henn and Betty D. Henn, Defendants–Appellants.**

No. 10CA0363.

Colorado Court of Appeals, Div. V.

Oct. 13, 2011.

White and Steele, P.C., Frederick W. Klann, Adam J. Goldstein, Denver, CO, for Defendants–Appellees.

Garfield & Hecht, P.C., Christopher D. Bryan, Matthew C. Ferguson, Aspen, CO, Conrad & Scherer, LLP, William R. Scherer, Fort Lauderdale, FL, for Defendants–Appellants.

Opinion by Judge CARPARELLI.

In this real property action, defendants Preston B. and Betty D. Henn (the Henns) appeal a trial court order granting a preliminary injunction against them and in favor of plaintiff, Westpac Aspen Investments, LLC (Westpac). We affirm.

This case presents an issue of first impression regarding whether the merger of title doctrine extinguishes a prescriptive easement when the sole owner of the servient estate holds title to the dominant estate in joint tenancy with his spouse. We conclude that it does not.

Westpac sued the Henns for, among other things, injunctive relief requiring the Henns to remove a fence and locked gate blocking access to an express easement, and to quiet title to a prescriptive easement across the Henns' lot for pedestrian access to Westpac's property.[1]

The court entered a preliminary injunction against the Henns and others prohibiting them from "obstructing access by [Westpac and others] to [Westpac's] property consistent with the use of [Westpac's] property for residential purposes." It concluded, among other things, that Westpac had demonstrated a reasonable probability of success regarding its claim that the fence and a gate on the Henns' property impermissibly obstruct Westpac's access to its express easement, and regarding its claimed prescriptive easement across the Henns' property.

The essential question before us is whether the trial court erred when it granted the preliminary injunction. To answer that

Sherman & Howard, L.L.C., B. Joseph Krabacher, Robert S. Hoover, Aspen, CO, for Plaintiff–Appellee.

1. Westpac also named The Residences at Little Nell Development, LLC, and related developer entities (collectively Little Nell) as defendants in this action. As an appellee here, Little Nell takes no position regarding the Henns' arguments except to assert that Little Nell is not legally obligated to provide Westpac an alternative pedestrian access to its property. Because resolution of this appeal does not require consideration of whether Westpac has an alternative access to its property, our analysis focuses on the respective rights and obligations of Westpac and the Henns.

question, we must first determine whether the court erred with regard to the factual and legal conclusions upon which the injunction depends. We reach the following conclusions:

1. The Henns' property is subject to a prescriptive easement benefitting Westpac's property;

2. Ownership of the two parcels did not merge in 1989, and, thus, the doctrine of merger did not extinguish the easement; and

3. Temporary lack of use of the easement during construction in 2000 and 2005 did not extinguish the easement.

## I.  Background

Westpac and the Henns own neighboring residential lots in the Tipple Woods subdivision at the base of Aspen Mountain, adjacent to the Aspen Resort ski area. Created in 1959, the subdivision originally consisted of five lots, three of which were on a steep slope and not accessible by motor vehicles. In 1960, to enable access to the upper lots, the original owners created an express easement on which they built a tramway and staircase. The tram terminated in the highest lot (now Lot 3), which is currently owned by the Henns.

In 1984, the owner of the adjacent lower lot divided it into two lots. Westpac now owns Lot 2, which is adjacent to Lot 3, and which Westpac claims enjoys the benefits of a prescriptive pedestrian easement across Lot 3 that had been in use since the early 1960s.

The 1984 plat that created Lot 2 and the lower lots also contained the express tram and staircase easement, which the landowners continued to use to access Lots 2 and 3. The terrain prevented direct access to Lot 2 from the easement. And because the tram ended within Lot 3, pedestrian access to Lot 2 was by way of a footpath across a portion of Lot 3. The 1984 plat did not create an express easement for the path.

Little Nell wanted to build luxury condominiums on the three lower lots of the Tipple Woods subdivision. In 2005, Little Nell finalized its development project. It did so, in part, by way of a First Amended Plat that consolidated the lower three lots, designating them as "the Residence Lot," and assigning the current numbers to the lots Henn and Westpac now own.

In accordance with the First Amended Plat, Little Nell removed the tram and, in substantially the same location as the historic tram and staircase, built a pedestrian staircase that ends within the Henns' lot. During the removal of the tram and construction of

the staircase, Little Nell obtained a temporary access easement from adjacent property owners for the benefit of the upper lots.

After the staircase was completed, Westpac resumed accessing its property by way of the footpath across the Henns' property. And, without obtaining the required permits, it improved the path by installing a heated sidewalk. Then, also without obtaining the required permits, the Henns installed a fence and locked gate across the path leading to the Westpac property, thereby preventing access to the staircase.

Unable to access its property from the staircase easement, Westpac filed this lawsuit seeking, in part, to quiet title to an easement based on the footpath and to require the Henns to remove the gate and fence. After conducting an evidentiary hearing, the trial court granted Westpac's request for a preliminary injunction. The court found that Westpac had shown a reasonable probability of success on the merits of its prescriptive easement claim and that Westpac was entitled to injunctive relief because it had no practical access to its residence. The court declined to address Westpac's other claims for relief.

This appeal followed. The Henns do not challenge Westpac's right to use the express staircase easement. However, according to the Henns, Westpac lost any right to a prescriptive easement for the footpath across their property that connects the top of the staircase with Westpac's property.

## II. The Prescriptive Easement

The Henns contend that Westpac has not demonstrated a reasonable probability that it would prevail on the merits of its claim for a prescriptive easement for the footpath across the Henns' property. We disagree.

■ An easement is a right that burdens a parcel of land (the servient estate) and benefits another parcel (the dominant estate). A prescriptive easement is established when the use (1) is open or notorious; (2) has continued without effective interruption for the prescriptive period; and (3) is either adverse or pursuant to an attempted but imperfect grant. *Lobato v. Taylor*, 71 P.3d

938, 950 (Colo.2002). In Colorado, the prescriptive period is eighteen years. Section 38–41–101(1), C.R.S.2011.

■ On review, we will not disturb a trial court's determination concerning the existence of a prescriptive easement if the court based its factual findings on competent evidence in the record. *Trask v. Nozisko*, 134 P.3d 544, 550 (Colo.App.2006). We review the court's legal conclusions de novo. *Brown v. Faatz*, 197 P.3d 245, 249 (Colo.App.2008).

■ We draw all reasonable inferences in favor of the prevailing party and defer to the fact finder's decision on the credibility of the witnesses; sufficiency, probative effect, and weight of the evidence; and inferences and conclusions drawn from conflicting evidence. *Olson v. Hillside Community Church SBC*, 124 P.3d 874, 880 (Colo.App.2005).

### A. Open and Notorious

On appeal, the Henns do not challenge the trial court's findings that the use of the path was open and notorious.

### B. Continued Use

The Henns contend that Westpac cannot establish the path was continuously used without effective interruption because it was not used during the construction of the new house on Lot 2 in 2000 and during the Little Nell construction in 2005. We are not persuaded.

■ To acquire a prescriptive easement, the use must be continued without effective interruption for the eighteen-year prescriptive period. § 38–41–101(1); *Lobato*, 71 P.3d at 950. Intermittent use on a long-term basis satisfies the requirement for continuous use. *Clinger v. Hartshorn*, 89 P.3d 462, 466 (Colo.App.2003) (affirming easement in favor of seasonal hunting outfitters); *see also Weisiger v. Harbour*, 62 P.3d 1069, 1073–74 (Colo.App.2002) (affirming easement based on use ten to twelve times per year); *Gleason v. Phillips*, 172 Colo. 66, 70, 470 P.2d 46, 48 (1970) (affirming easement based on testimony of "periodic use" from 1941 until 1968 and holding that the "nature of the right

claimed is the right to passage whenever passage is desired").

■ Here, the trial court found that the owners of Lot 2 used the path for at least forty-three continuous and uninterrupted years, from 1962 until 2005. The court also found: "For a period of time during [the 2005 Little Nell] construction, the Henns and Westpac had temporary access on a different route through the Durant condominium project. This interrupted continuous access along the Path. Any prescriptive period that might have been running ended in 2005."

The record supports the trial court's findings that the path was in continuous use starting in 1962. Therefore, the prescriptive period was fulfilled in 1980—twenty years before the house on Lot 2 was rebuilt and twenty-five years before the Little Nell construction. Consequently, the easement was established before the alleged interruptions to the prescriptive period.

Accordingly, we conclude that the record supports the trial court's finding that the path was continuously used without effective interruption during the required prescriptive period.

### C. Adversity

The Henns contend that the use of the path was not adverse because the owners of Lot 3 gave permission for the path's use. We disagree.

■ To show adverse possession, a claimant must prove possession that is actual, adverse, hostile, or under a claim of right. *Trask*, 134 P.3d at 549. Whether a use is adverse is based upon consideration of, and reasonable inferences from, the conduct and statements of the parties. *Welsch v. Smith*, 113 P.3d 1284, 1287 (Colo.App.2005). The owner's acquiescence is not permission and does not defeat adverse possession. *Id.* at 1288.

■ Here, the trial court found that "the use of the Path has been adverse for 43 continuous and uninterrupted years." The record supports the court's finding. Contrary to the Henns' characterization, the witnesses' testimony reflects that the path was used without permission being explicitly sought or received. "Using an easement for more than eighteen years entitles the holder to the presumption that use was adverse." *Weisiger*, 62 P.3d at 1072. The testimony presented at the hearing did not establish that the use of the easement was permissive and is not sufficient to overcome the presumption that the use was adverse.

Thus, we conclude that the record supports the trial court's finding that the use of the path was adverse. Accordingly, we conclude the trial court did not err in finding that Westpac has demonstrated a reasonable probability that the Henns' property is subject to a prescriptive easement benefitting Westpac's property.

### III. Merger

The Henns contend that, in 1989, the owner of Lot 2 also owned Lot 3, and that, under the doctrine of merger, adverse use of the footpath ended, any easement was terminated, and any subsequent use did not qualify for a new prescriptive easement. We are not persuaded.

### A. Law

■ When the servient and dominant estates come under common ownership, the need to burden the servient estate no longer exists and the easement is extinguished. *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 747 (Colo.App.2002). However, "an easement will not terminate by merger if others own outstanding interests in the dominant or servient estates." *Id.* The common ownership "must be absolute, not defeasible or determinable, and coextensive, rather than owned in different fractions." *Id.* at 748.

■ Here, there is a question of whether sole ownership of the servient estate and joint tenancy in the dominant estate constitutes common ownership. We conclude that for merger purposes, common ownership does not exist in those circumstances.

■■ The principal distinction between joint tenancy and tenancy in common is the right of survivorship. *Taylor v. Canterbury*, 92 P.3d 961, 964 (Colo.2004). "Upon the

death of one of the co-tenants in joint tenancy, the entire undivided interest of the deceased passes, by operation of law, to the surviving co-tenant." *Bradley v. Mann,* 34 Colo.App. 135, 525 P.2d 492, 493 (1974), *aff'd,* 188 Colo. 392, 535 P.2d 213 (1975).

▮▮▮▮ A joint tenant does not have absolute dominion of the jointly held property. *In re Estate of Lee v. Graber,* 170 Colo. 419, 424, 462 P.2d 492, 494 (1969), *abrogated in part by Taylor v. Canterbury,* 92 P.3d at 965. Although a joint tenant may occupy the whole property, he or she may not alienate, encumber, or transfer the interest of another joint tenant. *First Nat'l Bank v. Energy Fuels Corp.,* 200 Colo. 540, 545, 618 P.2d 1115, 1118 (1980).

## B. Facts

In 1978, William Yarbrough took title to Lot 3. On June 27, 1989, Mr. Yarbrough and his spouse, Julia Yarbrough, bought Lot 2, and took title as joint tenants. Eleven days later, on July 7, 1989, the Yarbroughs conveyed Lot 2 to the Julia Kinloch Yarbrough Revocable Trust. On September 5, 1989, Mr. Yarbrough sold Lot 3 to a third party. Westpac bought Lot 2 in 2002, and the Henns acquired Lot 3 in 2004.

The Henns argue that William Yarbrough's ownership interest in both lots during the eleven days in July 1989 resulted in a merger of title that terminated the prescriptive easement for the footpath and restarted the prescriptive period.

Here, the trial court found that at "no time was title to Lot 2 and Lot 3 held in a completely identical manner." The court also found that "title to Lot 3 and Lot 2 did not join in complete unity of title." Therefore, the court concluded that Westpac had shown a reasonable probability of success that "use of the Path has been adverse for 43 continuous and uninterrupted years."

## C. Analysis and Conclusions

▮▮▮▮ Mr. Yarbrough was the sole owner of Lot 3 from March 1978 until October 1989. Although he had an ownership interest in Lot 2 from June 27, 1989 until July 7, 1989, he was not the sole owner. He held title as a joint tenant with Julia Yarbrough. As a joint tenant, Ms. Yarbrough owned equal rights in the dominant estate, and Mr. Yarbrough did not have the power to unilaterally alienate the easement right that benefited the dominant estate.

Notably, because Julia Yarbrough did not possess an ownership interest in Lot 3, she still required an easement to access Lot 2, in which she had an ownership interest. This situation highlights why common ownership of both estates must be absolute in order to extinguish an easement.

Accordingly, the trial court did not err when it concluded that the two lots were not owned in "completely identical manner," and that Mr. Yarbrough's ownership interests in the two lots did not result in a merger of title and termination of the easement. Consequently, the prescriptive period was not "reset" in 1989. *See Salazar v. Terry,* 911 P.2d 1086, 1089 (Colo.1996) (in practical effect, once common ownership interrupts the eighteen-year period for purposes of adverse possession, the period begins to run again when the parcels are later separated).

## IV. Lack of Use

The Henns also contend that the lack of use of the easement during construction in 2000 and 2005 extinguished the prescriptive easement. We disagree.

▮▮▮▮ The test for use during the prescriptive period required to establish an easement is not equivalent to whether an established easement has been abandoned. "Common law abandonment must be established by clear, unequivocal, and decisive evidence of affirmative acts on the part of the owner of the easement manifesting an intention to abandon the easement." *Dep't of Transp. v. First Place, LLC,* 148 P.3d 261, 265 (Colo. App.2006) (citation omitted); *see also Westland Nursing Home, Inc. v. Benson,* 33 Colo. App. 245, 250, 517 P.2d 862, 866 (1974)("[M]ere nonuse of an easement acquired by grant, however long continued, does not constitute an abandonment.").

▮▮▮▮ At the preliminary injunction hearing, the Henns presented no evidence show-

ing that Westpac, or its predecessor, intended to abandon the easement during construction in 2000 or 2005. On the contrary, the evidence indicated that the parties, including Westpac, intended to continue using the staircase easement after Little Nell built the pedestrian bridge for the benefit of the upper lots. The parties testified that access via the condominium complex was temporary, and the Westpac owner testified that he intended to use the path and staircase easement, which was negotiated by the parties as part of the 2005 development.

Thus, we conclude that the lack of use of the prescriptive easement during construction in 2000 and 2005 did not extinguish the prescriptive easement.

## V. Preliminary Injunction

The Henns contend the trial court erred in granting a preliminary injunction enjoining them from obstructing Westpac's use of the easement. We disagree.

### A. Law

A preliminary injunction is designed to preserve the status quo or to protect a party's rights pending a final determination of a case. *Cody Park Prop. Owners' Ass'n v. Harder*, 251 P.3d 1, 6–7 (Colo.App.2009).

To grant a preliminary injunction, a trial court must find the moving party has demonstrated (1) it has a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury exists which may be prevented by injunctive relief; (3) there is no plain, speedy, and adequate remedy at law; (4) there is no disservice to the public interest; (5) the balance of equities favors the injunction; and (6) the injunction preserves the status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo.1982).

We review a trial court's preliminary injunction ruling for an abuse of discretion and will only overturn it when the court's conclusion is manifestly unreasonable, arbitrary, or unfair. *Evans v. Romer*, 854 P.2d 1270, 1274 (Colo.1993). A trial court's findings should be upheld on appeal when evidence in the record supports the findings. *Cody Park*, 251 P.3d at 6.

### B. Analysis and Conclusions

Here, the trial court issued detailed findings in its order granting Westpac a preliminary injunction. The court addressed each of the six *Rathke* factors before issuing the injunction, and the Henns have failed to show that the trial court had no basis for its findings.

The court found that Westpac had shown a reasonable probability of success on the merits of its claim for a prescriptive easement across the Henns' property, that Westpac had no practical access to its residence, and that the injunction preserved the established access route used since 1962, which was the status quo. The court also found that the injury was real, immediate, and irreparable, and that Westpac had no plain, speedy, and adequate remedy at law. The court rejected the Henns' argument that Westpac had alternative access to its property because such access "would require significant additional construction, would change [Westpac's] point of access to a lower floor of the residence and might require further agreement or litigation with the Developer Defendants."

To the extent that the Henns argue that the preliminary injunction should not have been entered because the court made erroneous merger, continuous use, and adversity findings, we reject those arguments for the reasons previously discussed. Based on the record before us, we agree with the trial court's determination that Westpac showed a probability of success on the merits of its prescriptive easement claim.

In addition, the record supports the trial court's findings that the denial of access to its residential property would constitute real, immediate, and irreparable injury. The Henns' assertion of other theoretical access routes is not sufficient to preclude Westpac from using its established easement to access its residence.

Accordingly, we conclude the trial court did not abuse its discretion in granting Westpac a preliminary injunction because the

court's findings were supported in the record and were not manifestly unreasonable, arbitrary, or unfair.

### VI. Costs

The Henns, Westpac, and Little Nell request their costs pursuant to C.A.R. 39. Because we affirm the trial court's order, Westpac and Little Nell are entitled to their costs under Rule 39.

The order is affirmed.

Judge ROMÁN and Judge BERNARD concur.