The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 7, 2020

## 2020COA77

### No. 17CA1971, *Lannie v. Bd. of Cty. Comm'rs* — Taxation — Property Tax — Residential Land

A division of the court of appeals answers a question left open in *Mook v. Board of County Commissioners*, 2020 CO 12 — whether, for purposes of classifying vacant property as residential land for tax classification, the phrase "common ownership" refers to identical ownership or merely overlapping ownership.  The division concludes that identical ownership is required.

COLORADO COURT OF APPEALS                          **2020COA77**

Court of Appeals No. 17CA1971
Board of Assessment Appeals Case Nos. 68965 & 69093

Paul Anthony Lannie and Donna Dean Lannie,

Petitioners-Appellants,

v.

Board of County Commissioners of Eagle County, Colorado; and Board of
Equalization of Eagle County, Colorado,

Respondents-Appellees,

and

Board of Assessment Appeals, State of Colorado,

Appellee.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TOW
Dailey and Vogt*, JJ., concur

Announced May 7, 2020

Ryley Carlock & Applewhite, F. Brittin Clayton III, Denver, Colorado, for
Petitioners-Appellants

Bryan R. Treu, County Attorney, Christina C. Hooper, Assistant County
Attorney, Eagle, Colorado, for Respondents-Appellees

Philip J. Weiser, Attorney General, Emmy A. Langley, Assistant Solicitor
General, Katie Allison, Assistant Attorney General, Denver, Colorado, for
Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    In Colorado, residential land is taxed at a significantly lower rate than vacant land.  *See* Colo. Const. art. X, § 3; § 39-1-104.2, C.R.S. 2019.  This variance in the tax rate has spawned a plethora of cases in which taxpayers with combinations of residential and vacant parcels have sought to have the vacant land reclassified as "residential land," which requires a showing that (1) the vacant parcel is contiguous with the residential parcel; (2) the parcels are under common ownership; and (3) the parcels are used as a unit.  § 39-1-102(14.4)(a), C.R.S. 2019.  Divisions of this court have come to differing conclusions as to the meaning of each of these criteria.

¶ 2    In *Mook v. Board of County Commissioners*, 2020 CO 12, our supreme court addressed three such cases, each of which involved a dispute over one of the three requirements: *Mook v. Board of County Commissioners*, (Colo. App. No. 17CA0437, May 3, 2018) (not published pursuant to C.A.R. 35(e)) (contiguity); *Kelly v. Board of County Commissioners*, 2018 COA 81M (common ownership); and *Hogan v. Board of County Commissioners*, 2018 COA 86 (used as a unit).  The supreme court affirmed the divisions' judgments in *Mook* and *Hogan*, reversed the division's judgment in *Kelly*, and provided guidance on each of the three criteria.  In the wake of *Mook*, several

1

cases, including this one, were remanded for reconsideration in light of the court's decision.

¶ 3     This case involves two of the three criteria — whether the parcels were under common ownership and whether they were used as a unit.  To resolve the first issue, we must answer a question left open in *Mook*: Does "common ownership" under the tax code require that identical parties hold record title to each contiguous parcel?  We answer that question "yes."  Because the parcels were not under common ownership during two of the three tax years at issue in this case, we affirm the decision of the Board of Assessment Appeals (BAA) for those two years.  We reverse the decision of the BAA for the third tax year and remand the matter for consideration of whether the parcels were used as a unit under the analysis announced in *Mook*.

## I.     Background

¶ 4     Petitioners, Paul Anthony Lannie and his wife Donna Dean Lannie,[1] own two contiguous parcels of land in Eagle County, Colorado — one with a home on it (the residential parcel) and an

---

[1] Because they share the same surname, we will refer to Paul and Donna by their first names.  We mean no disrespect in doing so.

2

adjacent one that is undeveloped (the subject parcel). For tax years 2014 and 2015, Paul held title to the subject parcel solely in his name, while he and Donna held title to the residential parcel as joint tenants. By the time of the valuation for tax year 2016, Paul conveyed the subject parcel to himself and Donna as joint tenants.

¶ 5    The county assessor classified the subject parcel as vacant land. The Lannies appealed the classification for the 2014 and 2015 tax years to the Board of County Commissioners of Eagle County and the classification for 2016 to the Board of Equalization of Eagle County (collectively, the County). After the County upheld the assessor's classification, the Lannies appealed to the BAA. The BAA held a consolidated hearing and thereafter entered two orders upholding the County's rulings. The BAA concluded that the subject parcel was not used as a unit in conjunction with the improvements on the residential parcel for any of the tax years in question, and further concluded that, for tax years 2014 and 2015, the parcels were not under common ownership.

¶ 6    The Lannies appealed to this court, and a different division affirmed the BAA's orders. *See Lannie v. Bd. of Cty. Comm'rs*, (Colo. App. No. 17CA1971, Dec. 13, 2018) (not published pursuant to

C.A.R. 35(e)) (*Lannie I*).  Specifically, the division agreed with the BAA that the parcels were not used as a unit.  As a result, the division did not address the issue of common ownership.  As noted, the supreme court vacated that decision and remanded for reconsideration in light of *Mook*.  *Lannie v. Bd. of Assessment Appeals*, (Colo. No. 19SC56, Mar. 16, 2020) (unpublished order).  We thus address both whether the parcels were under common ownership and whether they were used as a unit.

## II.    Standard of Review

¶ 7     In reviewing BAA decisions that classify property for tax purposes, we defer to the BAA's factual findings but review its legal conclusions de novo.  *See Ziegler v. Park Cty. Bd. of Cty. Comm'rs*, 2020 CO 13, ¶ 11.  When a statute concerns property tax, we also owe deference to, but are not bound by, the interpretation of the statute by the BAA and by the Property Tax Administrator in the Assessors' Reference Library (ARL).  *See Mook*, ¶ 47.

¶ 8     We review the interpretation of a statute de novo, seeking "to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole."  *Id.* at ¶ 24 (quoting *Bly v. Story*, 241 P.3d 529,

533 (Colo. 2010)).  In so doing, we construe any undefined term "in accordance with its ordinary or natural meaning."  *Id.* (quoting *Cowen v. People*, 2018 CO 96, ¶ 14).  Applying the plain meaning of the language requires us to "give consistent effect to all parts of a statute, and construe each provision in harmony with the overall statutory design."  *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12 (citing *In re Miranda*, 2012 CO 69, ¶ 9).

### III.   Analysis

### A.   Common Ownership

#### 1.   Applicable Law

¶ 9      The tax code does not define the term "common ownership."  It does, however, direct that "[o]wnership of real property shall be ascertained by the assessor from the records of the county clerk and recorder . . . ."  § 39-5-102(1), C.R.S. 2019.  "Thus, according to the plain language of the tax code, assessors must rely on county records to determine whether properties are held under 'common ownership.'"  *Mook*, ¶ 80.

¶ 10     In *Kelly*, record title to the residential parcel was held by a qualified personal residence trust, while record title to the subject parcel was held by a revocable family trust.  *Kelly*, ¶ 4.  The same

person (Kelly) was settlor, trustee, and beneficiary of both trusts. *Id.* Before the supreme court, Kelly argued that because she held "overlapping equity ownership and control" of both properties, they were under common ownership. *Mook*, ¶ 79. The supreme court rejected this argument, holding that the record of legal title was conclusive. *Id.* at ¶ 86. In doing so, however, the court explicitly declined to consider the issue of whether overlapping *legal* title would suffice, or rather whether identical ownership is required. *Id.* at ¶ 86 n.7.

### 2. Analysis

¶ 11  Here, there are overlapping legal title interests in the parcels for tax years 2014 and 2015.[2] During those tax years, because Paul Lannie was a record titleholder of both properties — one held in his name alone and one held jointly with Donna — we turn to the question left open in *Mook*.

¶ 12  The BAA urges us to adopt its interpretation of the term, which is that common ownership requires identical record title

---

[2] There is no dispute that the parcels were under common ownership for tax year 2016. The discussion of common ownership, therefore, is limited to tax years 2014 and 2015.

owners. The BAA posits that this interpretation was established in *Sullivan v. Board of Equalization*, 971 P.2d 675 (Colo. App. 1998). But the BAA reads *Sullivan* too broadly. There, the sole owner of the subject parcel was the taxpayer, while the taxpayer's wife was the sole owner of the residential property. *Id.* at 676. In other words, there was no overlapping legal title as there is here. Furthermore, the taxpayer in *Sullivan* conceded the lack of common ownership and, thus, the appellate court did not address that issue. *Id.* For this reason, while we generally afford deference to statutory interpretation by the agency charged with administering the statute, *see Mook*, ¶ 47, because the BAA misapplied the holding in *Sullivan*, we do not defer to its construction in this context. *See El Paso Cty. Bd. of Equalization v. Craddock*, 850 P.2d 702, 704-05 (Colo. 1993) ("Courts, of course, must interpret the law and are not bound by an agency decision that misapplies or misconstrues the law.").

¶ 13    Nevertheless, for the following reasons, we conclude that the statute requires identical ownership.

¶ 14    First, as noted, the supreme court observed that section 39-5-102(1) requires the assessor to rely on county records. *Mook*, ¶ 80.

7

When doing so, the supreme court discussed its earlier decision in *Hinsdale County Board of Equalization v. HDH Partnership*, 2019 CO 22. *Mook*, ¶¶ 80-84. In *Hinsdale*, the supreme court invoked the same statutory language when it held that "assessors must value and tax separate parcels of real property and assess taxes on the parcel owner as determined by the county's real property records." *Hinsdale*, ¶ 22. The court further noted that "Colorado's tax statutes reflect the legislature's intent to levy property tax on the record fee owner of real property." *Id.*

¶ 15    The court in *Mook* reiterated that "the *party holding record title to the property is the fee owner* responsible for property taxes." *Mook*, ¶ 81 (quoting *Hinsdale*, ¶ 25). The court then rejected Kelly's argument that assessors could look to record title to determine ownership for purposes of tax *liability*, while taking a different approach to determine ownership for purposes of tax *classification*. *Id.* at ¶¶ 82-83. Noting that nothing in the statute suggested such differing approaches to determining ownership, the court stated, "[t]herefore, we won't require assessors to use different standards when classifying property and assessing taxes." *Id.* at ¶ 83.

¶ 16 Reading *Hinsdale* and *Mook* in conjunction with each other leads to one conclusion: in the tax code, owner and taxpayer are synonymous. Thus, having a common ownership means the taxpayer for each parcel must be the same. For this to be the case, the fee owners must be identical.

¶ 17 Second, we note that interpreting the phrase "common ownership" to merely require overlapping ownership would lead to absurd results. *See Ziegler*, ¶ 19. We acknowledge that, here, it is the subject parcel that is solely held by one person who is also a joint titleholder of the residential parcel; therefore, Paul's assertion that he is the common owner of both parcels is reasonable. Query, however, what if the reverse were true? What if Paul solely owned the residential parcel while he and Donna jointly owned the vacant property? The overlap of ownership would be of the same nature and degree, but the result (if treated as common ownership under the tax code) would be that Donna would be entitled to pay the residential tax rate on her property despite not owning a residence. To put a finer point on it, what if Paul co-owned the vacant property as one of a hundred co-owners, but only a one percent share of the

property?  Would the other ninety-nine co-owners share the benefit of Paul's beneficial tax rate?

¶ 18     In our view, either scenario would be an absurd result, and one we cannot conclude would be consistent with the legislature's intent.  And, if "common ownership" is read to encompass mere overlapping interest, there is no textual basis establishing any limit on how large or small the overlap must be.  Nor could we remedy this omission under the guise of construing the statute by imposing some limit such as "substantially overlapping."  *See Trujillo v. Colo. Div. of Ins.*, 2014 CO 17, ¶ 12 ("We do not add words to a statute.").

¶ 19     Finally, we note that the phrase "common ownership" is not foreign to real property law.  Take, for example, the situation in which a parcel is burdened by a prescriptive easement.  Under the doctrine of merger, if the two estates come "under common ownership," the easement is extinguished.  *Salazar v. Terry*, 911 P.2d 1086, 1090-91 (Colo. 1996).  However, for merger to occur, there can be no other ownership interests in either estate.  *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 747-48 (Colo. App. 2002) (citing Restatement (Third) of Property: Servitudes § 7.5 cmt. d (Am. Law Inst. 2000)).  In *Westpac Aspen Investments,*

*LLC v. Residences at Little Nell Development, LLC*, 284 P.3d 131 (Colo. App. 2011), one party was the sole owner of the servient estate and held title to the dominant estate in joint tenancy with someone else. *Id.* at 136. A division of this court held that, because the two lots were not owned in "completely identical manner," their co-ownership was insufficient to extinguish the easement. *Id.* at 136-37.

¶ 20     For these reasons, we conclude that, for purposes of the tax code, "common ownership" requires that the taxpayer(s) for the two properties must be the same, and thus the parcels must have identical record titleholders. Because the two parcels were not under common ownership for tax years 2014 and 2015, we affirm the BAA's decision denying reclassification for those years.

## B.     Used as a Unit

¶ 21     Because the parcels were under common ownership in tax year 2016, we turn to whether the parcels were used as a unit during that year.

### 1.     Applicable Law

¶ 22     Like the term "common ownership," the term "used as a unit" is not defined in the tax code. However, the code requires the

Property Tax Administrator to produce manuals, procedures, and instructions to aid assessors in their valuation and assessment of property taxes. § 39-2-109(1)(e), C.R.S. 2019. The product of this requirement is the ARL, which assessors are required to follow. *Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17-18 (Colo. 1996).

¶ 23    In *Hogan*, the taxpayers' vacant lot next to their residential parcel contained an unpaved driveway, and the taxpayers used the parcel to walk their dog, park vehicles, and secure scenic views with a privacy buffer. *Hogan*, ¶¶ 2, 28. The assessor concluded that none of these uses satisfied the "used as a unit" requirement, in part because they were not active uses of the property and because the vacant parcel did not contain any residential improvements, and the BAA agreed with the assessor. *Mook*, ¶ 46.

¶ 24    In affirming the division's reversal of the BAA, the supreme court rejected the BAA's interpretation of "used as a unit," and provided "additional direction." *Id.* at ¶ 63. To satisfy the "used as a unit" requirement, "a landowner must use multiple parcels of land together as a collective unit of residential property." *Id.* at ¶ 77. Contrary to what had been held in some earlier cases, (1) there is

no requirement that the vacant parcel itself contain a residential improvement, *id.* at ¶¶ 59-62; (2) the primary purpose of the vacant parcel should be for the support, enjoyment, or other non-commercial activity of the occupant of the residence, *id.* at ¶ 72; (3) the "used as a unit" requirement is the same for multi-parcel cases as it is in the context of reclassifying a single parcel of land, *id.* at ¶¶ 68, 73-74; (4) in applying the third ARL guideline (would the vacant parcel likely be conveyed with the residential parcel as a unit?), the focus is to be on how the owner presently uses the land, not on the owner's potential future plans for use of the property, *id.* at ¶¶ 53-55; and (5) while the vacant parcel must be used as an integral part of the residence, its uses need not be "necessary" or "essential," and passive as well as active uses may satisfy the requirement, *id.* at ¶¶ 50-52, 56-57.

## 2.    Analysis

¶ 25    Paul testified at the hearing that he and Donna bought the residential parcel as a vacation home, used it mainly during the ski season, and planned to retire there. Shortly thereafter, he bought the subject parcel to protect his views of the Gore Range and to add a flat yard space where his grandchildren could play. The family

enjoyed walking on the subject parcel and viewing wildlife there. The subject parcel was kept in its natural condition until 2017, when the Lannies sodded the flat area.

¶ 26    The county's appraiser testified that she had seen no evidence of walking, children playing, or trampled grass on the four occasions when she visited the subject parcel.  She did not consider activities such as walking and wildlife viewing to meet the statutory requirement that the parcel be used as a unit with the residence on the adjoining parcel.  The appraiser also opined that, given the topography, any structure on the subject parcel would likely be built on the lower portion of the lot and thus would not affect views of the Gore Range from the Lannies' residence.

¶ 27    Crediting the appraiser's testimony over Paul's, and citing other maps and photographs in the record, the BAA found that the Lannies had not shown that the subject parcel was used as a unit in conjunction with the residential improvements on the residential parcel.  Although its orders indicate that the BAA was basing its ruling on the persuasiveness of the various witnesses' testimony, it is not clear that the BAA was assessing that testimony under the standards announced in *Mook*.  Similarly, in affirming that ruling in

*Lannie I*, we included language — e.g., that multi-parcel cases should be treated differently from single-parcel cases — that is inconsistent with *Mook*. In these circumstances, we conclude that the BAA should reconsider the "used as a unit" issue under the *Mook* standards set forth above. In reconsidering the issue, the BAA may in its discretion order such additional testimony or briefing as it deems necessary.

## IV. Conclusion

¶ 28    The BAA's order denying reclassification for the 2014 and 2015 tax years is affirmed. The order denying reclassification for the 2016 tax year is reversed, and the case is remanded to the BAA for reconsideration in accordance with this opinion.

JUDGE DAILEY and JUDGE VOGT concur.