24CA0033 Locklear v Kochevar 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0033
Fremont County District Court No. 22CV54
Honorable Lynette M. Wenner, Judge

Juli L. Locklear, Marlene Marie Roglinske, David F. Sandoval, and Bonnie B. Sandoval,

Plaintiffs-Appellees,

v.

Violet Kochevar,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lipinsky and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

Daniel B. Slater, Canon City, Colorado, for Plaintiffs-Appellees

Messner Reeves LLP, Brenda L. Bartels, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1     Defendant, Violet Kochevar, appeals the trial court's judgment declaring that plaintiffs, Juli L. Locklear, Marlene Marie Roglinske, David F. Sandoval, and Bonnie B. Sandoval, have prescriptive easements for ingress and egress over a strip of land that Kochevar claims to own ("the strip" or "the disputed strip") and quieting title in those easements in plaintiffs.  We affirm.

## I.     Background

¶ 2     The parties own lots bordering a thirty-five- to fifty-foot-wide strip of land that Kochevar claims to own.  It was apparently a railroad bed back in the day, but the railroad abandoned it several decades ago.  The strip runs north–south to the east of the parties' lots, along the backyards of those lots.  Locklear and Roglinske (Locklear's mother) own the northernmost lot (Lot 12); the Sandovals own the lot just to the south of Lot 12 (Lot 13); Bruce Schneider owns the lot just to the south of the Sandovals' lot (Lot 14); and Kochevar and Ada Micheli own the southernmost lot (Lot 15).  Kochevar and others own a lot that may or may not include the disputed strip, known as Lot 90, which lies to the east of Lots 12–15.

¶ 3 Each of Lots 12–15 is fenced in the back, along the disputed strip, with gates. Locklear's lot — Lot 12 — has an eight- to ten-foot-wide double gate large enough for vehicles to pass through. The Sandovals' gate is only wide enough for people to pass through. None of the parties' backyards are accessible by vehicle from their front yards; the only potential vehicle access to the backyards (or along the backyards) is via the disputed strip.

¶ 4 Just north of the disputed strip is another strip of land, used as a road, that also runs north–south; County Road 119 is the northern terminus of that strip, and the disputed strip is the southern terminus. Plaintiffs and others have accessed the disputed strip from County Road 119.

¶ 5 In the summer of 2022, Kochevar, claiming ownership of the disputed strip, demanded that the owners of Lots 12–14 stop using it unless they paid her $400 per year. Schneider reached an agreement with Kochevar, but the other lot owners — Locklear (and her mother) and the Sandovals — refused, claiming that they have the right to continue to use the strip. Kochevar blocked access to the strip from the north and to the gates in plaintiffs' backyards by

building a fence within inches of plaintiffs' backyard fences, physically barring both pedestrians and vehicles from traversing the disputed strip and accessing plaintiffs' backyards from the disputed strip. (Kochevar had blocked access from the south many years earlier.)

¶ 6    Plaintiffs sued. They asserted claims to quiet title and for trespass. The gist of those claims is that plaintiffs have prescriptive easements over the disputed strip for access to their lots by virtue of their and their predecessors-in-interest's use of the strip for such access "for well over twenty years."[1]

¶ 7    Plaintiffs moved for a preliminary injunction requiring Kochevar to remove the fence she had put up just to the east of plaintiffs' existing fences. Following an evidentiary hearing, the court granted that motion. Kochevar took down the fence.

¶ 8    The case was then tried to the court. The court entered a detailed written order finding that plaintiffs had proved the

---

[1] Plaintiffs named as defendants other persons and entities who may claim an interest in the subject properties. None of them are a party to this appeal.

existence of prescriptive easements.[2] The court declared the existence of the easements, defined their scope (both in terms of their dimensions and permitted use), and quieted title to those easements in plaintiffs' names.

## II. Discussion

¶ 9 Kochevar's sole contention on appeal is that the evidence is insufficient to support the trial court's finding that plaintiffs and their predecessors-in-interest used the disputed strip for the requisite eighteen-year period. Kochevar doesn't challenge the court's findings as to the adversity of use or the scope of the easement declared by the court. We conclude that the evidence is sufficient.

### A. Applicable Law and Standard of Review

¶ 10 "A prescriptive easement is a nonexclusive right to use the land of another for a specified purpose — usually, but not always, ingress and egress — after adverse use of the land for that purpose for the period specified by law." *LR Smith Invs., LLC v. Butler*, 2014

---

[2] The trial court considered evidence presented at the preliminary injunction hearing in addition to the evidence presented at trial as permitted by C.R.C.P. 65(a)(2).

COA 170, ¶ 14; *see Wright v. Horse Creek Ranches*, 697 P.2d 384, 387-88 (Colo. 1985).  "An easement by prescription is established when the prescriptive use is: 1) open or notorious, 2) continued without effective interruption for the prescriptive period, and 3) the use was either a) adverse or b) pursuant to an attempted, but ineffective grant."  *Lobato v. Taylor*, 71 P.3d 938, 950 (Colo. 2002); *accord Lo Viento Blanco, LLC v. Woodbridge Condo. Ass'n*, 2021 CO 56, ¶ 20 (*Lo Viento Blanco*).  The statutory prescriptive period is eighteen years.  § 38-41-101(1), C.R.S. 2024; *see LR Smith Invs.*, ¶ 14.

> As to the degree and type of use, there is no rule of law requiring that to secure a right-of-way by prescription one must be in continuous possession in the sense that [the] claimant must physically possess it every moment of every day.  The right that matures . . . is the right to passage whenever desired, arising from continued, open and [ad]verse use for the statutory period.

*Rivera v. Queree*, 358 P.2d 40, 42 (Colo. 1960); *accord Weisiger v. Harbour*, 62 P.3d 1069, 1073 (Colo. App. 2002).  Thus, "[i]ntermittent use on a long-term basis satisfies the requirement for continuous use."  *Westpac Aspen Invs., LLC v. Residences at Little*

*Nell Dev. LLC*, 284 P.3d 131, 135 (Colo. App. 2011); *see Gleason v. Phillips*, 470 P.2d 46, 47-48 (Colo. 1970) (affirming finding of a prescriptive easement for ingress and egress based on "intermittent[]" or "periodic[]" use); *Rivera*, 358 P.2d at 41-42 (affirming finding of a prescriptive easement for trash collection and ingress and egress over an alley based on continuous use when desired); *Weisiger*, 62 P.3d at 1071-72 (affirming finding of a prescriptive easement over a mining road for ingress and egress based on use "ten to twelve times per year").

¶ 11    "A trial court's determination that a party is entitled to a prescriptive easement is one of fact." *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 23, *aff'd*, 2021 CO 56 (*Woodbridge Condo. Ass'n*).  We therefore review such a finding for clear error, meaning that we won't disturb the court's finding if any evidence in the record supports it.  *Id.* at ¶ 24 (citing *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo. 1994)); *see Lo Viento Blanco*, ¶ 17; *Westpac Aspen Invs.*, 284 P.3d at 135; *Weisiger*, 62 P.3d at 1071.  In applying this standard, we draw all reasonable inferences from the evidence in favor of the prevailing party and

defer to the trial court as fact finder on matters of witness credibility; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions drawn from conflicting evidence. *Westpac Aspen Invs.*, 284 P.3d at 135; *Weisiger*, 62 P.3d at 1071; *see also LR Smith Invs.*, ¶ 25 ("[W]e are not at liberty to re-evaluate conflicting evidence and set aside the court's findings when they are supported by the record.").

¶ 12    But when, as in this case, the trial court accepts one side's proposed findings of fact and conclusions of law almost verbatim, we'll scrutinize the trial court's findings somewhat more critically than if the court had drafted them. *See Uptime Corp. v. Colo. Rsch. Corp.*, 420 P.2d 232, 235 (Colo. 1966); *Trask v. Nozisko*, 134 P.3d 544, 549 (Colo. App. 2006).

## B.    Analysis

¶ 13    Before turning to an examination of the evidence, we address the bases of Kochevar's challenge to its sufficiency. She argues that (1) there is testimony undermining the trial court's finding of use for the requisite period; (2) there is no direct evidence of use by the owners of Lots 12–13 — that is, no testimony by the prior owners of

7

the lots — for portions of the statutory eighteen-year period; and (3) the trial court relied "merely" on the existence of the gates in the lot owners' backyard fences. Each of these arguments fails.

¶ 14    First, as noted, the existence of conflicting evidence in the record is of no moment if record evidence supports the verdict, and, relatedly, it's the trial court's role, not ours, to resolve such conflicts. Simply put, we don't sit as the fact finder. *Woodbridge Condo. Ass'n*, ¶ 41; *Gagne v. Gagne*, 2019 COA 42, ¶ 51.

¶ 15    Second, a party isn't required to present direct evidence to prevail on a claim; circumstantial evidence is also admissible, and "[c]ircumstantial evidence enjoys the same status as direct evidence." *In re Estate of Ramstetter*, 2016 COA 81, ¶ 53 (quoting *People in Interest of S.G.*, 91 P.3d 443, 452 (Colo. App. 2004)). The same is true for inferences that reasonably may be drawn from direct or circumstantial evidence. And in any event, as discussed below, some direct evidence supports the trial court's finding of use for the requisite eighteen-year period.

¶ 16    Third, the trial court didn't rely entirely on the existence of the gates. Rather, the court treated the gates as circumstantial

evidence of use and recited a great deal of the other evidence presented at trial. We must presume that the court relied on that evidence to the extent it supports the verdict. *See Hjelle v. Mid-State Consultants, Inc.*, 394 F.3d 873, 880 (10th Cir. 2005) ("Findings of fact should be 'liberally construed in support of a judgment.'" (quoting *Zack v. Comm'r of Internal Revenue*, 291 F.3d 407, 412 (6th Cir. 2002))).

¶ 17    With the appropriate standards in mind, we conclude that at least the following evidence supports the trial court's finding of use for the requisite eighteen-year period:

- The houses on the lots were built in the 1990s. Gates opening to the disputed strip have existed since at least the late 1990s.

- The concrete pad at the eight-foot-wide gate on Locklear's lot was poured in 1997. Exhibit 1 shows the pad. There is no way to get to that pad (or the backyard) from the front yard of Locklear's lot. Plaintiff Bonnie Sandoval also testified that a person can't access her backyard from the

front of the house; the only access is from the disputed strip.

- Locklear's parents bought Lot 12 in 2003 or 2004. They stored a boat, vehicles, a riding mower, and a trailer in the backyard. The large gate in the back was there when Locklear's parents bought the lot.

- The lot owners, including Schneider (who has lived on Lot 14 since 1994), have maintained portions of the disputed strip behind their respective properties.

- Workers have used the strip for access to the lots for many years.

- One such worker, Levi McDowell, testified that the strip has been a "road for a long time," he saw residents using the road when he was "a little kid" (he was age thirty-five at the time of trial), and he saw people use the strip "numerous times" in the years since he started working on backyards abutting the strip in 2016.

- Plaintiff Bonnie Sandoval testified that she started walking on the disputed strip in 1987, when she was twenty-five.

She stopped when Kochevar put up a gate at the south end of the strip in the mid-1990s. She said, "[I]t's a road. It's been a road since 1987." She also said the strip always "looked like a road."

- Exhibits admitted into evidence at trial showed worn tire tracks on the disputed strip.

- After the Sandovals bought Lot 13 in 2018, Bonnie Sandoval used her back gate to go on walks three or four times each summer and several other times during the year. She also drove on the disputed strip, as have others, to access her backyard.

- Jamie Baca, who grew up on County Road 119 just north of the disputed strip, testified that, when she was a child, she would walk down or ride a bike on the disputed strip to visit a friend (she was forty-five at the time of trial). She said she saw other people and vehicles use it as well, and it was still being used when the houses were built on the adjoining lots.

11

- Caleb Richter, who has worked for Kochevar since 2009 tending to her fruit trees and irrigation, testified that there are tracks "where you could see people have driven . . . and would continue to drive." As well, "you could definitely tell it was used as a back entrance from time to time."

- Schneider testified that he used the disputed strip from 1994 to 2021 without Kochevar's permission. He also saw the owners of the lots to the north of his lot use the strip "when they felt they had business back there or a need."

¶ 18    From all this evidence, and inferences that reasonably could be drawn therefrom, the trial court could find that Kochevar's neighbors to the north used the disputed strip for ingress and egress for at least eighteen years. While the evidence may not be overwhelming, it didn't have to be. Plaintiffs were only required to prove their claim by a preponderance of the evidence. *See Brown v. Faatz*, 197 P.3d 245, 249 (Colo. App. 2008). On this record, we

can't conclude that the trial court clearly erred by determining that they had done so.[3]

III.   Disposition

¶ 19    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.

---

[3] We don't need to address the issue whether Kochevar actually owns the disputed strip.  (The trial court found that she hadn't produced evidence of such ownership.)  As the trial court recognized, plaintiffs were required to prove their claims to prescriptive easements notwithstanding any defect in Kochevar's title.  *See Nelson v. Van Cleve*, 352 P.2d 269, 271 (Colo. 1960); *Fastenau v. Engel*, 270 P.2d 1019, 1021 (Colo. 1954).