24CA1506 Ulshoffer v Johnson 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1506
Garfield County District Court No. 24CV30047
Honorable Denise K. Lynch, Judge

---

Genie M. Ulshoffer and Michael R. Wright,

Plaintiffs-Appellees,

v.

William Steven Johnson and Nancy R. Johnson,

Defendants-Appellants.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Garfield & Hecht P.C., David H. McConaughy, Eric D. Musselman, Christine L. Gazda, Glenwood Springs, Colorado, for Plaintiffs-Appellees

JVAM PLLC, Lucas Van Arsdale, Quentin H. Morse, Charles N. Simon, Glenwood Springs, Colorado, for Defendants-Appellants

¶ 1    In this easement dispute between owners of adjoining property, defendants, William Steven Johnson[1] and Nancy R. Johnson, appeal the district court's order granting a preliminary injunction against them and in favor of plaintiffs, Genie M. Ulshoffer and Michael R. Wright (the neighbors).  We affirm.

## I.    Background

¶ 2    We glean the following facts from the evidence presented at, and the district court's findings following, the preliminary injunction hearing.[2]

### A.    The Parcels Involved

¶ 3    The Johnsons' property abuts the neighbors' parcels.  Before 2019, the neighbors' parcels were a single lot, which the neighbors (who are siblings) owned as tenants in common after inheriting the property from their aunt.  This lot included a single residence on the northeast corner of the parcel.  In 2019, Ulshoffer and Wright subdivided the property into two separate parcels: Ulshoffer

---

[1] According to the record, William Steven Johnson goes by Steve. When referring to him individually, we use this name as well.
[2] Of course, neither the district court's findings nor our recitation of the facts are conclusive for purposes of the ultimate resolution of the merits of this dispute.  *See Mt. Emmons Min. Co. v. Town of Crested Butte*, 690 P.2d 231, 239-40 (Colo. 1984).

retained the parcel with the residence (tract one), while Wright retained the eastern portion of the property, which presently has no residence on it (tract two).

¶ 4     A private driveway provides access to the Johnsons' and the neighbors' properties.  The driveway branches off a public highway, where it then splits into a Y-shaped offshoot.  A small portion of the driveway runs south.  The other branch (the disputed road) continues east and ends at the Johnsons' current residence.  The portion of the disputed road at issue in this case falls on the Johnsons' property.

### B.     Gate Installation

¶ 5     A few years after the neighbors subdivided their plot into two parcels, Wright put tract two up for sale and advertised its potential use as a residential property.  Upon learning about Wright's advertisement, the Johnsons erected a locked gate along the

disputed road, thereby blocking road access to part of tract one and all of tract two.[3]

### C. Preliminary Injunction Hearing

¶ 6 Unable to access their property, the neighbors filed suit seeking, in part, to quiet title to an easement based on one of two alternate theories: prescriptive easement or easement by necessity. They also sought a preliminary injunction requiring the Johnsons to remove the gate.

¶ 7 After an evidentiary hearing, the district court granted the neighbors' request for a preliminary injunction. The court found that the neighbors had shown a reasonable probability of success on the merits for both their easement by necessity and prescriptive easement claims, and that they were entitled to injunctive relief because they had no practical access to their property. The court additionally found that the neighbors had a reasonable probability

---

[3] Ulshoffer's residence on tract one is in front of the gate, and therefore still accessible, but the remainder of tract one lies behind the gate. Because a creek runs through tract one, separating the bulk of the parcel from the portion on which the residence sits, the gate prevents Ulshoffer from having vehicular access to a large stretch of her property.

of success on their trespass claim based on the gate's unreasonable interference with their easement.

## II. Preliminary Injunction

¶ 8 The Johnsons contend the district court abused its discretion by granting the neighbors a preliminary injunction directing the Johnsons to unlock the gate and enjoining them from hindering the neighbors' use of the disputed road. We disagree.

### A. Applicable Law and Standard of Review

¶ 9 A court may grant a preliminary injunction if it finds that the moving party has demonstrated (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury exists which may be prevented by injunctive relief; (3) there is no plain, speedy, and adequate remedy at law; (4) there is no disservice to the public interest; (5) the balance of equities favors the injunction; and (6) the injunction preserves the

status quo pending a trial on the merits. *Rathke v. MacFarlane*, 648 P.2d 648, 653-54 (Colo. 1982).[4]

¶ 10    Whether to grant a preliminary injunction is a decision that rests within the sound discretion of the trial court. *Id.* at 653. Accordingly, "[w]e review a trial court's preliminary injunction ruling for an abuse of discretion and will only overturn it when the court's conclusion is manifestly unreasonable, arbitrary, or unfair." *Westpac Aspen Invs., LLC v. Residences at Little Nell Dev., LLC*, 284 P.3d 131, 138 (Colo. App. 2011). "On review of a preliminary injunction, the trial court's factual findings will be upheld unless they are so clearly erroneous as to find no support in the record." *Bill Barrett Corp. v. Lembke*, 2018 COA 134, ¶ 16, *aff'd on other grounds*, 2020 CO 73, ¶ 16.

---

[4] Quoting *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 70, the district opined that "a party seeking an injunction as a remedy for wrongful interference with an easement is not required to prove irreparable harm." Nevertheless, the district court found such harm had been shown. We note that *Rinker* involved a permanent injunction, and we are not aware of a case that extends *Rinker*'s holding to preliminary injunctions. Further, on appeal the Johnsons include irreparable harm as a required showing for preliminary injunctive relief, and the neighbors do not appear to dispute that. And in any event, neither party disputes the district court's finding that such harm was shown here. Thus, we assume, without deciding, that *Rinker* does not apply to requests for preliminary injunctive relief.

## B.  Analysis

¶ 11    On appeal, the Johnsons contend that the district court abused its discretion by finding that (1) the neighbors had established a reasonable probability of success on the merits for their easement claim, and (2) the proposed injunction preserved the status quo.  We disagree with both contentions.

### 1.  Prescriptive Easement

#### a.  Applicable Law

¶ 12    A party can establish an easement by prescription when their use of the property is: (1) open or notorious, (2) continued without effective interruption for the prescriptive period, and (3) either (a) adverse or (b) pursuant to an attempted, but ineffective grant.[5] *Lobato v. Taylor*, 71 P.3d 938, 950 (Colo. 2002).  The prescriptive period in Colorado is eighteen years.  § 38-41-101(1), C.R.S. 2024.

¶ 13    "A use is open and notorious if it is 'sufficiently obvious to apprise the owner of the servient estate, in the exercise of reasonable diligence, that another is making use of the burdened land so that the owner may object.'"  *Olson v. Hillside Cmty. Church*

---

[5] Neither party contends that a grant between the parties or the parties' predecessors was attempted.

6

*SBC*, 124 P.3d 874, 880 (Colo. App. 2005) (quoting *Clinger v. Hartshorn*, 89 P.3d 462, 466 (Colo. App. 2003)). Actual knowledge on the part of the owner of the servient estate need not be proved. *Id.* "Intermittent use on a long-term basis satisfies the requirement for open, notorious, and continuous use." *Weisiger v. Harbour*, 62 P.3d 1069, 1073 (Colo. App. 2002).

¶ 14    Adverse use of a prescriptive easement is established when the use was made without the landowner's consent. *Lo Viento Blanco, LLC v. Woodbridge Condo. Ass'n, Inc.*, 2021 CO 56, ¶ 21. "Whether a use is adverse is based upon consideration of, and reasonable inferences from, the conduct and statements of the parties." *Westpac Aspen Invs.*, 284 P.3d at 136. Adverse use may be established through acquiescence or silence of a property owner. *LR Smith Invs., LLC v. Butler*, 2014 COA 170, ¶ 16. And "[u]sing an easement for more than eighteen years entitles the holder to the presumption that use was adverse." *Weisiger*, 62 P.3d at 1072. The landowner can rebut this presumption by showing the claimant's use was permissive at any time during the statutory period. *Lo Viento Blanco*, ¶ 24.

### b. Analysis

#### i. District Court's Factual Findings

¶ 15     The Johnsons argue that the district court's factual findings are not supported by the record and are insufficient to establish the neighbors' prescriptive easement claim. Specifically, the Johnsons point to three factual findings in the court's preliminary injunction order: (1) the neighbors' grandmother used the disputed road "since 1937"; (2) Wright used it "all the time" growing up; and (3) Steve Johnson admitted that the neighbors and their predecessors have used the disputed road since the 1970s.

¶ 16     First, the Johnsons argue there is "no competent evidence that the neighbors' grandmother used the [disputed road]," and that Ulshoffer's testimony indicating otherwise was barred by the court. True, the court initially deemed Ulshoffer's testimony speculative when she was asked about her grandparents' use of the disputed road. However, after the admission of a 1937 photo that showed her grandparents' residence, the disputed road, and orchards on what is now tract one, Ulshoffer explained that her grandmother owned the land in the photo. She went on to testify that the orchards were only accessible via the disputed road and that they

8

were still being maintained when she visited as a child in the 1970s. This testimony provides record support for the court's factual finding that the neighbors' grandmother used the disputed road to cultivate the orchards as early as 1937. In any event, the testimony at least establishes such use in the 1970s, which is actually when the court found the clock had started and which is still well in excess of the statutory prescriptive period.

¶ 17 Second, the Johnsons contend that the court's statement that Wright used the disputed road "all the time" was contrary to the evidence. Wright testified that he lived with his aunt at her residence on what is now tract one for four years as a child until approximately 1982, and that he visited the property "all the time" after he moved out. When asked if he ever used the disputed road during his childhood after he moved out of the home, he again said, "all the time," and provided a litany of activities he engaged in, including biking, hunting, cultivating the orchard, and maintenance work. He also testified that he has continued to use the road to store items and dig drainage on tract two since inheriting the property in 2010.

¶ 18    The Johnsons argue that Wright's usage was not open, notorious, or continuous.  But "[i]ntermittent use on a long-term basis satisfies the requirement for open, notorious, and continuous use."  *Weisiger*, 62 P.3d at 1073; *see also Gleason v. Phillips*, 470 P.2d 46, 48 (Colo. 1970) (affirming prescriptive easement based on testimony of "periodic use" from 1941 until 1968 and holding that "[t]he nature of the right claimed is the right to passage whenever passage is desired").  Moreover, the Johnsons' attempt to isolate Wright's testimony to create a gap in time when the disputed road was not used is unavailing.  Ulshoffer provided additional testimony regarding the use of the road during that supposed gap.

¶ 19    Third, during the evidentiary hearing, counsel for the neighbors asked Steve Johnson, "And it's your understanding that the [neighbors] had been using that road, the disputed road, east of the locked gate . . . since your parents had owned the property in the 1970s."  He answered, "That's correct."  The Johnsons assert that this answer was later amended during cross-examination, when Steve Johnson testified that the disputed road was "hardly used" by the neighbors' aunt or her family prior to her passing.  He went on to state that "the only people that were using the property

10

were the ones leasing the property to run their cows and irrigate the property," and that those parties had permission to do so from the Johnsons.

¶ 20   But this testimony merely created a conflict in the evidence between Steve Johnson's initial answer, which aligned with the neighbors' testimony, and his later explanation.  The resolution of such conflicts is within the district court's province, and we may not disturb that resolution.  *Weisiger*, 62 P.3d at 1073.

¶ 21   The Johnsons argue that the second and third factual findings do not satisfy the prescriptive period in Colorado.  But, again, Wright's, Ulshoffer's, and Steve Johnson's testimony provide ample support for the court's determination that the eighteen-year prescriptive period was satisfied.

ii.   Adverse Use

¶ 22   The Johnsons additionally argue that they presented "collective, uncontroverted testimony that the use of the driveway was permissive."  But, as noted, "whether a use is adverse is based upon consideration of, and reasonable inferences from, the conduct and statements of the parties."  *Westpac Aspen Invs.*, 284 P.3d at 136.  The neighbors testified that neither of them had a

conversation with the Johnsons about permission to use the disputed road. This alone provides sufficient record support for the court's finding of adverse use. *See id.* (concluding that the plaintiffs' testimony that their use of the easement was done without permission being explicitly sought or received was sufficient to maintain the presumption of adversity afforded to easements used continuously for the prescriptive period). And while Steve Johnson testified that such a conversation did take place, it is, again, up to the district court to resolve conflicts in the evidence. *Weisiger*, 62 P.3d at 1073.

### iii. Scope of Prescriptive Easement

¶ 23 Finally, the Johnsons contend the district court erred by failing to make findings about the scope of the prescriptive easement claim, arguing that the neighbors' and their predecessors' use of the disputed road for agricultural purposes cannot convert it into an easement for residential access. *See Wright v. Horse Creek Ranches*, 697 P.2d 384, 388 (Colo. 1984) (explaining that "[t]he extent of an easement created by prescription is fixed by the use through which it was created") (quoting Restatement of Property § 477 (1944)). But we are aware of no requirement — and the

Johnsons direct us to none — that requires the precise scope of the easement to be resolved during the preliminary injunction phase of the litigation.

¶ 24 Indeed, the procedures surrounding preliminary injunctions tend to be less complete than the subsequent trial on the merits. *Mt. Emmons Min. Co.*, 690 P.2d at 239. The court made sufficient findings when it considered the necessary elements of a prescriptive easement without explicitly addressing its scope. The Johnsons' argument that Wright's sale of tract two would change the scope of the easement is a question that can be answered when the merits of the easement claim are addressed.[6]

### 2. Status Quo

¶ 25 Finally, the Johnsons argue that the court's preliminary injunction did not preserve the status quo because the gate had been in place for two years and the order to unlock the gate and allow access to the disputed road "re-established an old [status

---

[6] We further note that the neighbors' counsel at oral argument conceded that the neighbors have no plans to expand the scope of their historical use of the easement during the pendency of the litigation.

quo]," rather than "preserv[ing] the existing [one]."  The Johnsons misunderstand the term "status quo" in this context.

¶ 26    "A preliminary injunction is designed to preserve the status quo or to protect a party's rights pending a final determination of a cause."  *Cody Park Prop. Owners' Ass'n, Inc. v. Harder*, 251 P.3d 1, 6-7 (Colo. App. 2009).  It is well established in Colorado case law that the "status quo" refers to the practice in place prior to any interference with a party's access to an easement.  *See id.* at 7 (finding the trial court's injunction successfully preserved the status quo when it ordered the defendant to remove the barbed wire blocking plaintiff's access to their easement); *Westpac Aspen Invs.*, 284 P.3d at 138 (finding the trial court's injunction preserved the status quo by allowing access to a route used up until the defendant blocked it with a gate).  The preliminary injunction preserved the status quo when it ordered the Johnsons to keep the gate open allowing the neighbors to continue accessing their land during the pendency of the proceedings.

¶ 27    Because we find the district court did not abuse its discretion in granting a preliminary injunction on the prescriptive easement

claim, we need not address the merits of the neighbors' easement by necessity claim.

## III. Attorney Fees

¶ 28    The Johnsons request appellate attorney fees under C.A.R. 39.1 and section 13-17-102(2), C.R.S. 2024, contending that the neighbors' easement by necessity claim lacked substantial justification. Because the neighbors have succeeded on appeal, we decline to award attorney fees. In doing so, we also decline to consider whether the alternative argument we do not reach was — or will ultimately be determined to be — frivolous or groundless.

## IV. Disposition

¶ 29    The order is affirmed.

JUDGE YUN and JUDGE SULLIVAN concur.